Barbara **HUNT** et al.

v.

**Robert O. ARNOLD** et al.

**No. 5781.**

United States District Court
N. D. Georgia,
Atlanta Division.

Jan. 9, 1959.

---

E. E. Moore, Jr., Atlanta, Ga., Robert L. Carter, Thurgood Marshall, New York City, Donald Hollowell, A. T. Walden, Atlanta, Ga., Constance Baker Motley, New York City, for plaintiffs.

Eugene Cook, Atty. Gen., Robert Hall, Asst. Atty. Gen., E. Freeman Leverett, Asst. Atty. Gen., B. D. Murphy, Atlanta, Ga., for defendants.

SLOAN, District Judge.

In the complaint, as amended, the plaintiffs, Negroes residing in the City of Atlanta and in the Northern District of Georgia, filed on behalf of themselves and all other Negroes similarly situated and affected who are qualified and desire to receive educational opportunities and advantages at the Georgia State College of Business Administration, Atlanta, Georgia, allege that the regulations and requirements for admission to the Georgia State College of Business Administration are designed to and

do discriminate against Negroes and deny them due process of law and equal protection of the laws.

It is the contention of the plaintiffs that they are qualified for admission to the Georgia State College of Business Administration but that the defendants do, in accordance with established custom, usage and practice on account of their race and color, deny to plaintiffs and other qualified Negroes similarly situated, the right to attend said Georgia State College of Business Administration while at the same time they accord to white persons the privilege and right to attend said institution.

The plaintiffs contend that the rules of admission and the admission procedure adopted by the Board of Regents of the University System of Georgia governing admission requirements for admission to the Georgia State College of Business Administration, deny to plaintiffs, and other Negroes similarly situated, the right to be admitted to said college and deny to them the equal protection of the laws and due process of law as secured by the Fourteenth Amendment to the Constitution of the United States. The plaintiffs seek declaratory and injunctive relief.

The defendants deny that the rules of admission or admission procedures are unreasonable or discriminatory and aver that they are equally applicable to both white and Negro applicants for admission to the school and generally deny the allegations of the complaint.

The case came on for trial to the Court, without a jury, on December 8, 1958 and during the days of December 8, 9, 10, 11 and 12 evidence in behalf of the plaintiffs and the defendants was introduced and heard. Additional time in which to present written arguments and briefs was granted and such written arguments and briefs having now been filed, the Court proceeds to a determination of the controversy.

Giving consideration to the evidence, the Court makes the following

Findings of Fact

Plaintiffs

*Barbara Hunt*

Barbara Beatrice Pace Hunt was born September 5, 1933 and attended the public schools of Beaver Falls, Pennsylvania, a suburb of Pittsburg, graduating from Beaver Falls High School May 29, 1951.

In September 1951, she entered Clark College in Atlanta, Georgia and attended that institution during the 1951–1952 academic year. In September 1952 she was again attending Clark College but voluntarily left Clark College the latter part of September, 1952, and returned to Beaver Falls, Pennsylvania.

On March 4, 1953 Barbara Pace gave birth to a daughter, Alyce Ann Pace, (name later changed to Alyce Ann Hunt).

On October 20, 1953 Barbara Pace and Eldridge Hunt, Jr. filed application for license to marry and on November 7, 1953 they were married in Beaver Falls, Pennsylvania.

On March 19, 1954 a second child was born to Barbara Pace Hunt.

In 1955 Barbara Hunt and her husband separated and she, with her two children came to Atlanta where she obtained employment as a secretary with the Atlanta office of the Pittsburg Courier, a national Negro newspaper, remaining there for about two and one-half years. She is now employed at Atlanta University as a secretary in the Registrar's office.

*Myra Payne Elliott Dinsmore Holland*

Myra Payne Elliott was born in Temple, Carroll County, Georgia on March 20, 1932 and attended grammer school in Temple, Georgia and thereafter attended High School at David T. Howard and Booker T. Washington and later attended Boggs Academy, a private school at Keyesville, Georgia—graduating from that institution and receiving a diploma.

In 1952 she entered Spelman College in Atlanta, Georgia.

On May 1, 1954 Myra Elliott and Adolphus Dinsmore, Jr., obtained license to marry and were married on that date in Atlanta Georgia.

On August 4, 1954 Adolphus Dinsmore, III, was born to Myra Elliott Dinsmore.

On June 23, 1955 Myra Dinsmore was granted a divorce from Adolphus Dinsmore, Jr.

On October 5, 1956 Myra Dinsmore was married to Robert Holland in Atlanta, Georgia.

On June 7, 1957 Myretta June Holland was born to Myra Elliott Holland.

On April 23, 1958 Joyce Elaine Harland was born to Myra Payne Elliott Harland and Joseph R. Harland. Robert Holland's name was often mispronounced "Harland."

While this plaintiff has been employed in various jobs after leaving school, she was, at the time of filing the application for admission to Georgia State College of Business Administration, employed by the Atlanta Life Insurance Company, Auburn Avenue, Atlanta, Georgia.

*Iris Mae Welch*

This plaintiff was born in Auburn, Alabama but does not know the date of her birth, (see footnote [1]) but from other evidence and her personal appearance, the Court finds the probable date of her birth to be April 30, 1912.

She attended school in Alabama, Tuskegee High School and Alabama State High School, graduating from Alabama State High School in the spring of 1930.

After taking an extension course in a single subject during the term of 1934–1935 at Alabama State College, Miss Welch enrolled for and took a summer course of studies in each of the three years 1935, 1936 and 1942, having been admitted to Alabama State College upon a certificate from Alabama State High School.

In 1943, Miss Welch moved to Columbus, Georgia where she obtained employment with Mr. J. E. Jordan, who operated a photo-shop.

In 1945, Miss Welch moved to Atlanta, Georgia where she has since lived continuously. She has at all times been employed by Mr. J. E. Jordan, an active member of the National Association for the Advancement of Colored People, who, after moving to Atlanta, operated a cut-rate drug store which at the times relevant here was located at 255 Auburn Avenue in the City of Atlanta, Georgia but is now located at 1305 Jonesboro Road, Atlanta, Georgia. Miss Welch was and is employed in the capacity of bookeeper-clerk.

### Defendants

The defendants in this case are the members of the Board of Regents of the University System of Georgia, the Chancellor of the University System, and the President and the Registrar of the Georgia State College of Business Administration.

### The University System of Georgia

The management and government of all of the institutions comprising the University System of Georgia are vested in the Board of Regents. The Board of Regents determines the policies applicable to all the schools and colleges in the system.

The University System of Georgia is composed of some 16 institutions, divided into three general groups, as follows:

*Senior Institutions—White Students*

Athens—University of Georgia

---

1. Miss Welch has given conflicting statements as to the date of her birth, as follows:

 April 30, 1912—Voter's registration certificate.

 April 30, 1913—Her testimony on this trial.

 December 4, 1913—School record, Alabama State College.

 April 30, 1920—Her testimony on deposition.

 April 30, 1921—Given in her application for admission to Georgia State College of Business Administration.

Atlanta—Georgia Institute of Technology

Atlanta—Georgia State College of Business Administration

Augusta—Medical College of Georgia

Dahlonega—North Georgia College

Milledgeville—Georgia State College for Women

Statesboro—Georgia Teachers College

Valdosta—Valdosta State College

*Senior Institutions—Negro Students*

Albany—Albany State College

Fort Valley—Fort Valley State College

Savannah—State College

*Junior Institutions—White Students*

Americus—Georgia Southwestern College

Carrollton—West Georgia College

Cochran—Middle Georgia College

Douglas—South Georgia College

Tifton—Abraham Baldwin Agricultural College.

When a Negro files an application for admission to an institution maintained for white students, it has been the practice to send those applications to Mr. Siebert, the Secretary of the Board of Regents, and let Mr. Siebert offer them the opportunity to ask for out-of-state aid.

It has been and is the policy of the Board of Regents to assist Negro students to secure in institutions, outside the University System, graduate and professional work that is offered in the University System institutions for white students, but which is not offered at any one of the three institutions for Negro students. During 1956–1957, 2,-105 students received 2,715 scholarship aid grants for graduate and professional work at 79 institutions.

The Georgia State College of Business Administration

The Georgia State College of Business Administration was started about 1914 as The Evening School of Commerce of Georgia Tech, and operated under that name until about 1934 when it was separated from Georgia Tech, and was then operated under the name "University System Center" as an independent institution in the University System until 1946, when its name was changed to "Atlanta Division University of Georgia." It operated under this name until 1955 when it became a four year college offering in addition to degrees in Business Administration, courses leading to degrees in the liberal arts field, including the field of education. Degrees of Bachelor of Arts, Bachelor of Science, Bachelor of Business Administration and Master of Business Administration may be awarded at this institution.

The school may be attended by students as full time day students or as evening students.

For the 1956–1957 term there were in excess of 5,600 students enrolled there, some 2,200 for day time classes, and some 3,400 for evening classes.

Alumni of the institution, under any name that it has borne, are considered and accepted as alumni of the Georgia State College of Business Administration.

No Negroes have ever been enrolled at the Georgia State College of Business Administration and there are no Negro alumni of that institution. No Negroes had applied for admission to the institution prior to March, 1956.

Admission Requirements and Procedure at the Georgia State College of Business Administration

On April 8, 1953, the Board of Regents of the University System of Georgia adopted a resolution amending the requirements for admission to the various institutions of the University System of Georgia so as to provide that additional requirements must be met. The relevant portion of the resolution is substantially as follows:

Any resident of Georgia applying for admission to an institution of the Uni-

versity System in addition to meeting other requirements shall submit certificates from two citizens of Georgia, alumni of the institution he desires to attend, which shall certify that each of such alumni is personally acquainted with the applicant and the extent of such acquaintance; that the applicant is of good moral character, bears a good reputation in the community in which he resides, and in the opinion of such alumnus is a fit and suitable person for admission to the institution and able to pursue successfully the courses of study offered by the institution he desires to attend.

In addition the applicant shall also submit a certificate from the Ordinary or Clerk of the Superior Court of the county in which he resides that such applicant is a bona fide resident of the county, is of good moral character, and bears a good reputation in the community in which he resides.

On May 9, 1956, the regulation was further amended by providing that any applicant who lived in a county having a population of 100,000 or more might submit, in lieu of the certificate from the Ordinary or Clerk of the Superior Court, a certificate from a third alumnus of the institution that the applicant desired to attend. The amendment required that the third alumnus be one of those on a list of alumni designated by the President of the Alumni Association of the institution to assist the institution in its efforts to select students of character and aptitude and ability and to obtain corroborative evidence regarding the place of residence of such students. The certificate of the third alumnus in counties with a population of 100,000 or more was required to set forth the same facts as were required of the certificate from the Ordinary or Clerk of the Superior Court.

By an amendment adopted March 12, 1958, standards for the guidance of alumni, ordinaries and clerks of the superior court called upon or requested to execute certificates on behalf of applicants were adopted and set forth.

The admission requirements as amended by the resolution of April 8, 1953, and as thereafter amended, reserved to every institution of the University System the right to require any applicant to take appropriate intelligence and aptitude tests in order that the institution might have information bearing on the applicant's ability to pursue successfully courses of study for which the applicant wished to enroll and reserved the right to reject any applicant who failed to satisfactorily meet such tests. The resolution also reserved to every institution the right to determine the sufficiency of any certificate required by the regulation and the right to reject the application of any person who had not been a bona fide resident of Georgia for more than twelve months.

The bulletin of Georgia State College of Business Administration for the year 1955–1956, at page 6, provided as follows:

"Students entering for the first time should provide the Registrar in advance with a complete record of work done in other institutions including the secondary schools. The registration of an applicant who has not furnished the Registrar with the proper credentials is on a tentative basis. His registration is subject to cancellation should his transcript when received show him to be ineligible for admission."

On November 8, 1950, the Board of Regents of the University of Georgia adopted a resolution regulating the procedure whereby applicants for admission to institutions of the University System who had been denied admission and students who had been expelled or against whom disciplinary action had been taken might appeal from the decision of the admitting or disciplinary authorities. The resolution provided in substance that any dissatisfied applicant or student could appeal from the decision of the initial authority to the President of the institution he attended or to which he applied for admission, and that the

President of such institution should appoint a faculty committee to investigate the matter and should act after consideration of the report of such committee. If the student or applicant was dissatisfied with the action taken by the President of the institution, he was authorized to appeal to the Chancellor of the University System, who is the chief executive officer of the Board of Regents. If dissatisfied with the decision of the Chancellor, such appellant could appeal to the Board of Regents for final decision.

### Application for Admission to Georgia State College of Business Administration by Negroes Other Than Plaintiffs

In March of 1956 six Negroes, including one of the plaintiffs here, Myra Dinsmore, sought to apply for admission to the Georgia State College of Business Administration. These applicants mailed their applications together with their checks to cover the costs of their "course" or "community program" which they desired to participate in. The Registrar returned to each of these applicants their check or money order stating that the same had been furnished with applicants' "incomplete" application.

Two of the applicants furnished transcripts of their previous college work, but neither furnished the required certificates as to character or ability. However, it does not appear that either of the applicants were lacking in qualifications as to character or academic credits.

The application forms used by these applicants were forms that had been used while this institution had been a Division of the University of Georgia, during which time alumni of the University of Georgia were allowed to sign the certificates for applicants, but were used by these applicants after the adoption of the resolution requiring a certificate from alumni of the institution they desired to attend and after the institution had ceased to be a division of the University of Georgia and had become an entirely separate institution, the Georgia State College of Business Administration.

### Plaintiffs' Applications for Admission to Georgia State College of Business Administration

Prior to and in June of 1956 Miss Marian McDaniel was office secretary of the National Association for the Advancement of Colored People and the only person regularly present at the office of that organization which was located on Auburn Avenue in the City of Atlanta. Miss McDaniel has since married and is now Mrs. Marian McDaniel Moore.

The three plaintiffs, with Russell T. Roberts, a former plaintiff to this action, were known to Miss McDaniel and they frequently lunched together on Auburn Avenue. The making of applications for admission to the Georgia State College of Business Administration was a subject of discussion at the luncheon table and it was decided that such applications would be made by Miss McDaniel, Russell T. Roberts and each of plaintiffs.

At the luncheon table the composing and printing of a letter to alumni of the Georgia State College of Business Administration was discussed and the contents of the letter agreed upon. The letter was stenciled and mimeographed, the envelopes addressed and the letter prepared for mailing in the office of the National Association for the Advancement of Colored People and by its secretary.

These letters bore the date of June 11, 1956 and were addressed to alumni of the institution, none of whom were known to plaintiffs, asking if such alumnus would be willing to certify to the character, reputation, fitness, etc., for admission of any one of the signers, and if they were so willing, requesting an appointment, and the letters were signed by each of the plaintiffs. The letters were mailed by some of the

signers but no reply was received by any signer.

On June 14, 1956 the three plaintiffs and Russell T. Roberts and Marian McDaniel, the Secretary of the National Association for the Advancement of Colored People, each filled out an application form for admission to the Georgia State College of Business Administration. Neither the alumni certificates nor the certificate of the Ordinary or Clerk of the Superior Court were furnished. The applications were not accompanied by the transcript of the previous high school or college records of plaintiffs. On that date (June 14, 1956) they, with two Negro ministers, a newspaper reporter and photographer, proceeded to the office of the Registrar of the Georgia State College of Business Administration. The Registrar orally rejected the applications as incomplete. While at the college, plaintiffs sought to secure the required certificate from a number of alumni of the school who were there present, but plaintiffs and such alumni were unknown to each other, and it was on this ground that such alumni refused to sign a certificate.

The plaintiffs made no effort to secure the certificate from the Ordinary or Clerk of the Superior Court of Fulton County. Plaintiffs relied upon the fact that the Ordinary of Fulton County had in March, 1956, advised the attorney for other Negro applicants, by letter, that it was, at that time, the practice of the officials of the college to send applications to him for certification in batches after the applications had been processed and approved by the school.

### Plaintiffs' Actions After The Applications Had Been Rejected as Incomplete

The plaintiffs on June 15, 1956 employed counsel to represent them in determining their rights to be admitted and to attend this institution.

On June 15, 1956 the plaintiffs returned to the Registrar's office and had him to enter on their applications the word "incomplete."

After the Registrar stamped the applications of plaintiffs "incomplete," plaintiffs' attorney on the 15th day of June, 1956, wrote a letter to the President of the College. In this letter the plaintiffs requested that they be allowed to file their applications upon complying with the other regulations, on the grounds that the plaintiffs had no friends or acquaintances among the alumni and were not personally known to any member of the alumni of the institution. The President on June 22, 1956 replied that he had turned the letter over to the Attorney General of the State of Georgia because "it had implications of legal procedure." The President further advised that he had no recourse but to follow the regulations as adopted by the Board of Regents.

On July 5, 1956 the attorney for plaintiffs wrote to the Board of Regents and requested that the requirements as to certification by alumni be made inoperative and inapplicable to plaintiffs as plaintiffs were not personally known to any alumnus of the institution and that plaintiffs be admitted upon complying with all valid regulations and requirements. On July 12, 1956 the Chancellor replied, stating that the letter of plaintiffs' counsel had been presented to the Board of Regents at its regular meeting, was carefully considered, and for the reasons stated in the letter, the request was refused. Plaintiffs each visited the President of the National Association for the Advancement of Colored People and asked financial assistance in defraying expenses of this litigation. This request was granted and the National Association for the Advancement of Colored People is defraying the expenses of this litigation.

### Plaintiffs' Qualifications for Admission

Plaintiffs have each completed high school and in addition have had some college work and, while their scholastic qualifications would be subject to review under valid admission requirements of the Georgia State College

of Business Administration, the Court finds, under the evidence here, that the plaintiffs have scholastic credits sufficient to qualify them to make application for admission to the college.

While the evidence indicates that the plaintiffs, Barbara Hunt and Myra Elliott Dinsmore Holland, may not be of good moral character and for that reason may not be qualified for admission to the college, the evidence shows the other plaintiff, Iris Mae Welch, to be of good character and not lacking in qualification for admission.

### Judicial Notice

■ The Court takes judicial notice of the fact that it is not customary for Negroes and whites to mix socially or to attend the same public or private educational institutions in the State of Georgia, and that by reason of this presently existing social pattern, the opportunities for the average Negro to become personally acquainted with the average white person, and particularly with the alumni of a white educational institution, are necessarily limited.

### The Alumni Certificate Requirement

The effect of the alumni certificate requirement upon Negroes has been, is, and will be, to prevent Negroes from meeting this admission requirement. As a result Negro applications have been rejected and would hereafter be subject to be rejected as incomplete without being considered on their merits.

Plaintiffs did not and do not know any of the alumni of the Georgia State College of Business Administration.

White students, rarely, have difficulty in securing the alumni certificates.

### Stipulation

The parties have stipulated that there are no Negro alumni of the Georgia State College of Business Administration or of any other white institutions in the University System.

### Conclusions of Law

■ This being an action for declaratory judgment and equitable relief to protect civil rights, this Court has jurisdiction of the controversy by virtue of the provisions of §§ 1331 and 1343 of Title 28 and § 1981 et seq. of Title 42 of the United States Code.

■ This is a class action. The class is formed solely by the presence of the common question of law or fact. The right or liability of each member of the class is distinct. It is as individuals that plaintiffs are entitled to equal protection of the laws. Brown v. Board of Trustees of La Grange Independent School Dist., 5 Cir., 187 F. 2d 20; Moore's Federal Practice, 2nd Edition, Vol. 3, ¶ 23.11; Cf. National Ass'n For Advancement of Colored People v. Patty, D.C., 159 F.Supp. 503 (21).

The class here is composed of:

Negroes who are qualified to meet all valid requirements for admission to the Georgia State College of Business Administration and who are therefore eligible for admission to that institution. The plaintiffs must be members of the class that they purportedly represent. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22; Clark v. Chase Nat. Bank of City of New York, D.C., 45 F.Supp. 820; Moore's Federal Practice, 2nd Edition, Vol. 3, ¶ 23.04, p. 3419.

■ Plaintiffs would be entitled to declaratory or injunctive relief if it is shown that they, or one of them, have been injured or deprived of personal and present rights to admission to the Georgia State College of Business Administration. McCabe v. Atchison, T. & S. F. R. Co., 235 U.S. 151, 35 S.Ct. 69, 59 L.Ed. 169.

■ This Court is bound by the decisions of the Supreme Court of the United States, and for this Court to express disagreement with such decisions would not only be futile but improper.

■ The policy, custom, practice and usage of the defendants in maintaining and operating the Georgia State College of Business Administration on a

racially segregated basis is violative of the rights secured to plaintiffs, and of rights secured to other Negro students of Georgia, who are similarly situated, by the due process and equal protection clause to the Fourteenth Amendment to the Constitution of the United States. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; Id., 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083.

■ The scholarship program which aids Negro students to take graduate and professional work offered at white institutions of the University System of Georgia and at other institutions which accept Negroes, either outside the State or at private Negro institutions within the State, does not meet the requirement of equal protection. State of Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208.

■ The alumni certificate requirement is invalid as applied to Negroes because there are no Negro alumni of any of the white institutions of the University System of Georgia, and consequently this requirement operates to make it difficult, if not impossible, for Negroes to comply with the requirement, whereas white applicants do not face similar difficulties. The requirement, therefore, violates the equal protection clause to the Fourteenth Amendment to the Constitution of the United States.

■ That the motive of the plaintiffs in making application for admission to the Georgia State College of Business Administration was the filing of this suit is not significant. Doremus v. Board of Education, 342 U.S. 429, 434–435, 72 S.Ct. 394, 96 L.Ed. 475; Evers

v. Dwyer, 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222.

■ Plaintiffs' actions with reference to appeal met the requirements, if any, as to exhausting administrative remedies. School Board of City of Charlottesville, Va. v. Allen, 4 Cir., 240 F.2d 59, 63, 64; Gibson v. Board of Public Instruction of Dade County, 5 Cir., 246 F.2d 913(3), 914; Bush v. Orleans Parish School Board, D.C., 138 F.Supp. 337, 339, affirmed 5 Cir., 242 F.2d 156.

■ Plaintiffs and members of the class which they, or one of them represent, are entitled to an injunction enjoining the defendants from continuing to limit the Georgia State College of Business Administration to white students only, and enjoining defendants from requiring Negro applicants to that institution to furnish certificates as to their personal qualities which may be certified to only by alumni of the white institutions.

A judgment and decree in conformity with the findings here made and the conclusions here entered may be prepared and presented.

■ In formulating the decree, it is to be kept in mind that the authorities in control of the operation of the Georgia State College of Business Administration have the primary right and responsibility of fixing and passing upon the qualifications for admission.

The decree will only restrict the exercise of this right to prohibit denying admission to qualified Negroes solely because of their race and color, and to prohibit the adoption of admission requirements that will deny to them the equal protection of the laws and due process of law.