UNITED STATES of America, Appellant,

v.

STATE OF MISSISSIPPI et al., Appellees.

No. 21212.

United States Court of Appeals Fifth Circuit.

Dec. 28, 1964.

Gerald P. Choppin, Harold H. Greene, Alan G. Marer, Attys., Dept. of Justice, Burke Marshall, Asst. Atty. Gen., Robert E. Hauberg, U. S. Atty., John Doar, Battle Rankin, Attys., Dept. of Justice, Washington, D. C., for appellant.

William A. Allain, Asst. Atty. Gen. of Mississippi, Peter M. Stockett, Jr., Sp. Asst. Atty. Gen., Breed O. Mounger, Tylertown, Miss., Joe T. Patterson, Atty. Gen. of Mississippi, and Will S. Wells, Asst. Atty. Gen., Jackson, Miss., for appellees.

Before TUTTLE, Chief Judge, and JONES and ANDERSON,* Circuit Judges.

TUTTLE, Chief Judge:

This is another suit brought by the United States under the provisions of the Civil Rights Act of 1960, seeking to enjoin a Mississippi county registrar from engaging in racially discriminatory acts and practices to deprive Negro citizens of the right to register and vote, without distinction of race or color.

Filed, as it was, in August, 1961, the history of this litigation largely paralled a similar suit brought in Panola County several months later, in October, 1961. That action was finally terminated in this court when, on May 22nd of this year, we entered an opinion in the case of United States of America v. Duke, et al., 5 Cir., 332 F.2d 759, directing the trial court in the Northern District of Mississippi to enter an injunction largely as prayed for by the United States.

Because of the great similarity of the proof that was presented to the trial court in this case with that which was considered by us in the Duke case, and particularly in light of the specific findings by the trial court here, our recitation of the factual circumstances upon which we conclude that similar disposition is required in this case, can be considerably abbreviated.

At the time this suit was filed there were 4536 white persons and 2490 Negroes of voting age in Walthall County, Mississippi. The registration books showed that there were 4738 white persons currently registered to vote, and no Negroes. There had been a complete re-registration of the voters of Walthall County in 1946. The record does not disclose the reason for such re-registration. However, since the Mississippi statutes appear not to require a regular purging of the rolls on account of the death or removal of registrants, it may be that when the current rolls show substantially more registrants than there are eligible voters, the county election officials require a complete re-registration, under the provision of the Mississippi law, when "a new registration is necessary to determine correctly the names of the qualified electors."[1] Otherwise registration in Mississippi is permanent.

Even if these statistics are not proof of the fact, cf. United States ex rel. Goldsby v. Harpole, 5 Cir., 263 F.2d 71, 78, we find that the record before the trial court here fully substantiates the contention of the United States that,

---

* Of the Second Circuit, sitting by designation.

1. Section 3222, Mississippi Code Ann., 1942, as amended, provides: "If at any time the registration books of the county be or become in such confusion that a new registration is necessary to determine correctly the names of the qualified electors and the election district of each, the board shall order a new registration of voters to be made in like manner as in the case of the loss or destruction of the books."

at least until the date of the filing of this suit, voting was, for white persons in Walthall County, Mississippi, a simple corollary of citizenship. In the findings of fact made by the trial court in this case, the court said, "Substantially all white citizens who applied to register were allowed to register." As we stated in the Duke case, supra, "It is equally clear that the exercise of this basic right of citizenship was exclusively enjoyed by the white people of this county."

White persons who applied were permitted to register without complying with the current and increasingly difficult provisions of the voters' registration statutes enacted by the state of Mississippi on a time schedule that coincided with the indications that more Negroes would make the effort to register. As a result of this, "the barriers grew successfully higher, so that in 1960 the understanding clause was inserted, and in 1962 the good character requirement was added."

The registrar permitted illiterate white persons to register and gave assistance to white registrants in the filling out of their registration forms, so that it turned out, as was the case in Panola County, "the application was treated largely as an information form when submitted by a white person. It was a test of skill for the Negro. It was not even a test of literacy for the white, whereas any Negro applicant demonstrated his literacy in filling out the form. Moreover, even though aid was available to the white applicant when construing a section of the Constitution of the state of Mississippi, the sections given to such applicants were much simpler and shorter sections than those given to the Negroes to write and construe."

On this point the trial court, in this case, found as a fact:

"John Q. Wood did assign white people easy sections of the Constitution to construe and helped them to do so; while he assigned Negroes more difficult sections of the Constitution to copy and never helped them. The law, indeed [Mississippi statutes] enjoined John Q. Wood not to help anybody on one of these tests and he well understood that duty but did not observe it. He thus employed this test in this manner to discriminate against Negro citizens and thus denied them an equal right to register, which he so much more liberally and generously accorded white people." [2]

It is not necessary further to recite the specific evidence touching on these matters, other than to say that these findings were supported by ample testimony. However, since part of the basis for the refusal of the trial court to find the existence of "a pattern or practice" of discrimination touching on voting rights, depends upon the trial court's assumption that the relatively small number of Negro applicants for registration was "occasioned solely by reason of the fact that Negroes have not been interested in registering to vote," and that "no probative value can be ascribed to such statistics [4738 white registrants and no Negro registrants] because such imbalance in registration is not due in any part to any discrimination between the races," it is necessary to refer to one incident. On one occasion a Negro college student from Tennessee, who had been assisting in teaching Walthall County Negroes about how registration could be accomplished accompanied two prospective registrants to the office of

2. During the course of the hearing the trial court wrote a letter to the registrar directing that 13 illiterates be removed from the voters' rolls. It appears that one of them was re-registered and permitted to vote in the August primaries in the county and thereafter his name was removed by erasure and subsequently Wood filed an affidavit that he had never been re-registered. The trial court took note of this by saying: "He even re-registered an illiterate whom the court had stricken from his rolls and let him remain registered during August primaries in the county. He was stricken from the rolls only after the Justice Department had discovered and revealed his audacity to the court."

Mr. Wood at the county courthouse. The trial court has not made a specific finding of fact on credibility as between Wood's explanation of what then occurred and that of the two Negro witnesses who appeared on this trial. In light of the court's implicit credibility finding that Wood falsely deposed with respect to the reinstatement of the illiterate voter, discussed in footnote 2, amounting to what the court called "his audacity to the court," we conclude that a fair statement of what occurred follows:

It is undisputed that when Mrs. Peters and Mr. Wilson applied to defendant Wood for the right to register, Mr. Wood replied that since litigation was pending he would not register them. Thereupon, John Hardy, the student, introduced himself and started to apologize; whereupon Mr. Wood took a pistol out of a drawer and told Hardy to get out and, following him to the door, struck him in the head with the pistol. The trial judge, in his findings of fact, referred to this as "an assault." [3] The court made a finding that although the two Negroes who attempted to register at that time did not return thereafter, "that incident did not frighten or deter any Negro in the county from registering or attempting to register if he desired to do so."

Because of the remedial steps that are available under the Civil Rights Act, upon the finding by a trial court of the existence of a "pattern or practice" of deprivation of a voting privilege on account of race or color, 42 U.S.C.A. § 1971(e), the United States expressly moved the trial court to make such findings of pattern or practice. This the court declined to do on the stated ground, "There is no need or necessity for any finding by the court as to pattern or practice. There were relatively so few Negroes who applied to register to vote that it would be difficult if not impos-

sible to make any fair determination on that question under the circumstances in this case. But that is not important to a proper disposition of this case under proper control by the court in this case in the further registrations by that office under the orders of the court accompanying these findings."

■ The trial court, while finding the existence of all of the facts that would constitute a pattern or practice of discrimination, nevertheless declined to make that specific finding. However, a finding of a pattern or practice is either warranted or not according to the facts, not what they were called. Where, as here, the court found a continual course of conduct constituting the policy of the registrar, which is discriminatory, this was tantamount to a finding of pattern or practice within the definition of the statute so as to call into play the procedural benefits arising under Section 1971(e). We dealt with this fully in United States v. Mayton, 5 Cir., 335 F.2d 153, where, at page 158, we said: "The words *pattern or practice* were not intended to be words of art. No magic phrase need be said to set in train the remedy provided in § 1971(e)." See also the legislative history discussed at page 159.

As we did in the Duke case, supra, we conclude that the trial court erred in not finding a pattern or practice of discrimination on the record before us.

The trial court here, as did the trial court in the Duke case, arrived at the conclusion that the Negro residents who had attempted to register and who had been denied the opportunity, "were properly rejected by the registrar as being unqualified under any sort of reasonable application of proper tests." This finding disregards the fact that the evidence was overwhelming that white persons

---

3. This is the version given by the two persons seeking the right to register. Wood's version does not greatly differ except that he said that Hardy appeared truculent. He also testified that Hardy

"threw up his hand as though he might strike me." In a prior affidavit, Wood said nothing of Hardy's throwing up his hand.

were registered regardless of their qualifications and without regard to whether they were "qualified under any sort of reasonable application of proper test."

We find that at the time of trial substantially all of the eligible white voters in Walthall County, Mississippi, had been registered without being required to submit to any of the onerous tests or requirements. Some had even been permitted to register before they were of proper age and some who were completely illiterate. The remedy called for, therefore, is in all respects the same as that which we found appropriate in the Duke case. In that case we said:

■ "[W]ith respect to all Negro residents of Panola County who are otherwise qualified by residence and not disqualified by any of the statutory grounds of disqualification, they must be given an opportunity to register upon their subjecting themselves to the same requirements as were actually administered by defendant Duke and his deputies up until the date of the trial of this case in the district court."

■ The order entered by the trial court here must be vacated and set aside because it does not remedy the injustices resulting from the pattern and practice of discrimination that has thus far existed in Walthall County. The trial court correctly, of course, enjoined any future discrimination. This, however, was not sufficient. The effect of its order was to freeze the discrimination permanently.

Although uniformity can not often be achieved with respect to different voting units, we can see no reason why the remedy to be afforded the Negro citizens of Walthall County should not, in all respects, be the same as that which this court afforded by its order for Panola County in the Duke case. We, therefore, pattern the language of the opinion describing the relief to which the United States is entitled here after that which we prescribed in that case.

■ We have been advised that since the trial of this case Mr. Wood has died

and his successor, Joe M. Stinson, has taken over the office of registrar of Walthall County. This fact also parallels the situation in the Duke case. As we did there, we rule that Mr. Stinson is a proper party as a successor in office to Mr. Wood. This is provided for by Rule 19(4) of this court. Also, he was made a party to the injunction entered by the trial court who used the terminology, "John Q. Wood, as registrar of Walthall County, Mississippi, and his successors in office, under penalty of law, be and each is hereby enjoined:" Mr. Stinson's motion to dismiss the appeal as to him is, therefore, denied.

■ The trial court dismissed the suit as against the state of Mississippi. For reasons stated by us in the Duke case, we conclude that this was error. The fact that the registrar is elected by the local officials of Walthall County does not change his status as an official of the state of Mississippi. Moreover, since the freeze order which will have to be entered by the trial court contemplates the temporary suspension of the state's statutes regulating registration unless the state should see fit to cause re-registration of all the voters of this county, the state's presence as a defendant is essential to the granting of complete relief. See United States v. Duke et al., 5 Cir., 332 F.2d 759.

The trial court's order dismissing the state as a defendant is, therefore, reversed and set aside.

■ Provided that reasonable opportunities to register are given to the Negro citizens of Walthall County, there should be a limitation upon the time during which they may take advantage of the special registration which the trial court's order will provide. This court will not attempt to frame the terms of the order to be issued by the trial court, but is is strongly suggested that a period of a year after the date of the trial court's order should be adequate for those Negroes who desire to do so to undertake to complete their registration upon the terms outlined, provided, how-

ever, that the trial court shall satisfy itself that reasonable opportunities will be given during such period for all who desire to do so to offer themselves for registration.[4]

As further guidance to the trial court in the framing of its decree, we suggest that the defendants should be enjoined from determining the qualifications of Negro citizens in Walthall County in any manner or by any procedure different from and more stringent than the following which have heretofore been used by defendant Wood and his deputies in determining the qualifications of white voters: (a) that the applicant is or will be 21 years of age or older prior to the next election; (b) that the applicant is entitled to apply for registration without regard to whether such applicant has previously paid poll taxes; (c) that the applicant be afforded the opportunity to apply and complete the application form when either the registrar himself is present or the deputy registrar; (d) that applicants be not required to apply one at a time but persons presenting themselves to apply for registration shall be permitted to complete the applications simultaneously to the extent that the physical facilities of the registration office reasonably permit; (e) that applicants be advised at the time they apply, if a registrar or his deputy is present, as to whether they are accepted or rejected and, if they are accepted, that they be registered at such time.

The order should also require that in conducting registration of voters in Walthall County, the defendant must not use any qualifications as a prerequisite to registration other than the following which we conclude have heretofore been used by Wood and his deputies with respect to the registration of white applicants:

1. He is a citizen and is or will be 21 years of age or older at the time of the next election;

2. He has resided in the state two years and in the election district in which he intends to vote one year;

3. He embraces the duties and obligations of citizenship as demonstrated by his willingness to take and sign the oath to bear allegiance to the constitution of the United States and the State of Mississippi;

4. He is not disqualified by reason of conviction of a disqualifying crime, insanity or idiocy;

5. He is able to demonstrate a reasonable ability to read and write by completion of Questions 1 through 18 of the application form with or without assistance by defendant Wood or his agents, as needed.

The trial court should also require that the defendant registrar and his successors file a monthly report with the Clerk of the trial court with a copy to be mailed to the plaintiff's counsel monthly showing the names and dates of application for registration during the previous monthly period and the race of the applicant, the action taken on the application and, if the application is rejected, the specific reason or reasons for such rejection. The first of such reports shall cover the period from the date of the last application form, presented at the trial in this case, April 10, 1963.

The trial court shall retain jurisdiction of the case in order to make certain that the registration records of Walthall County are made available to attorneys or agents of the United States at all reasonable times in the office of the Circuit Clerk for the purpose of inspection, copying and photographing.

It being called to the attention of the court that Joe M. Stinson, Esquire, has now succeeded to the office of registrar of Walthall County, Mississippi, it is ordered that the said Joe M. Stinson be, and he is hereby substituted as a party defendant in this proceeding in accord-

---

4. This period can be equated with the one year provision of 42 U.S.C.A. § 1971

(e) dealing with court action qualifying persons to vote.

ance with the provisions of Rule 19(4) of this Court.

The judgment of the trial court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.