UNITED STATES of America,
Appellant,

v.

Arthur LOGUE et al., Appellees.

No. 21603.

United States Court of Appeals
Fifth Circuit.

April 21, 1965.

Harold H. Greene, Atty., Dept. of Justice, Washington, D. C., Vernol R. Jansen, Jr., U. S. Atty., Mobile, Ala., Burke Marshall, Asst. Atty. Gen., Carl W. Gabel, Bernard J. Haugen, Attys., Dept. of Justice, Washington, D. C., for appellant.

Gordon Madison, Asst. Atty. Gen., Montgomery, Ala., Blanchard L. Mc-Leod, Cir. Sol., Camden, Ala., Richmond M. Flowers, Atty. Gen. of Alabama, for appellees.

Before WOODBURY,* JONES and GEWIN, Circuit Judges.

PER CURIAM.

This action was instituted by the United States pursuant to 42 U.S.C.A. § 1971, as amended by the Civil Rights Acts of 1957 and 1960, to obtain injunctive relief against allegedly discriminatory practices in the registration of voters in Wilcox County, Alabama.[1] The district court denied the plaintiff's request for a preliminary injunction, finding that "the defendants have not engaged in acts and practices which have deprived Negro citizens of Wilcox County of the right to vote without distinction of race or color, and that they have not engaged in such acts and practices which were pursuant to a pattern and practice of racial discrimination."

The main controversy involves the validity of the "supporting witness" requirement as applied in Wilcox County. The requirement that an applicant, as a prerequisite to registration for voting, produce a qualified voter to "vouch" for him is not prescribed by any law of the State of Alabama. However, pursuant to its authority to promulgate such rules and regulations as it deems proper for the efficient processing and examination of applications for registration, Title 17, § 53, Code of Alabama, the Wilcox County Board of Registrars requires that all applicants for registration supply, as part of their application form, a section entitled "Examination of Supporting Witness." This part of the questionnaire form is not to be filled out and signed by the applicant himself, but must be completed by someone who is already a registered voter in the county. The supporting witness must affirm that he is acquainted with the applicant, knows that the applicant is a bona fide resident of the county, and is aware of no reason why the applicant would be disqualified from registering. This requirement is apparently designed to expedite the determination that the applicant has met the residency requirements and that he is of good character. It is undisputed that this voucher requirement, as promulgated, applies to all applicants for registration, both white and Negro.

In Wilcox County there were 6,085 Negroes of voting age and 2,624 white persons of voting age, according to the 1960 census. Although over 70% of the voting-age population is colored, no Negroes were registered to vote in the county at the time of the hearing before the district court in December 1963. On the other hand, over 90% of the whites of voting age had qualified to vote.[2] In the period from January 1, 1959, through October 17, 1963, 376 of the 386 white applicants became registered voters. During the same period, none of the 29 Negro applicants was accepted. An examination of the application forms of the Negroes, almost all of which were marked "incomplete," reveals that most of them were substantially completed except for the "Supporting Witness" section of the form. It seems generally agreed that most of the 29 were rejected for failure to fulfill the voucher requirement. The appellees do not contest any of the above facts in their brief.

After a careful consideration of the record and the issues presented, we have concluded that the district court erred in refusing to enjoin the use of the supporting witness requirement as part of the registration process in Wilcox County and in failing to find that the

---

\* Senior Judge of the First Circuit, sitting by designation.

1. The defendant Arthur Logue was succeeded in office by A. L. Wall after this suit had commenced. Pursuant to the provisions of Rule 25(d), Fed.R.Civ.P., he is automatically substituted as a party defendant. See also Rule 19(4) of this Court.

2. A registration book dated 1963 contained the names of 2,959 registrants, all white. While this figure is greater than the total eligible white population according to the 1960 census, the discrepancy apparently results from the Board's failure to keep its rolls current by striking the names of persons who had died or moved from the county.

Wilcox County Board of Registrars had deprived persons of the right to vote without distinction of race or color in violation of 42 U.S.C.A. § 1971(a). Therefore, we must reverse the district court's denial of the Government's motion for a preliminary injunction against the discriminatory practices.

First of all, there is substantial uncontradicted evidence in the record that the registration officials applied the supporting witness requirement in a discriminatory fashion. Several white witnesses testified that they did not know the person who filled out that part of their application form or that, although they were acquainted with the person who "vouched" for them, they did not request that person to act as their supporting witness. Some were apparently unaware of the voucher requirement and did not recall having that part of the form completed. On some occasions the registrar suggested to the applicant the names of persons who might serve as a supporting witness. The record discloses that of the 386 applications filed by white persons during the period covered by the record, county officials and employees served as supporting witnesses on 342. On the other hand, no one suggested the names of possible supporting witnesses to the Negro applicants and none of their forms were signed by employees of the county.

 Furthermore, we think the voucher requirement, imposing as it does a heavier burden on Negro than white applicants, is inherently discriminatory as applied in a county such as Wilcox. Since there were no Negro voters on the rolls in the county during the period in question, any Negro applicant had to obtain his supporting witness from the ranks of the white population. This court and other courts have noted that similar requirements inevitably impose a greater burden on Negroes than whites under existing dominant social patterns. For example, Negroes have been exempted from prerequisites for admission to previously all-white colleges which requir-

ed them to obtain recommendations from alumni. Meredith v. Fair (5 Cir. 1962) 298 F.2d 696, cert. denied, 83 S.Ct. 49, 9 L.Ed.2d 66; Hunt v. Arnold (N.D.Ga. 1959) 172 F.Supp. 847, 856. In both of those cases, the courts took note of the existing segregated social patterns as a basis for holding that a requirement that Negroes produce a recommendation from a class composed exclusively of white persons was inherently discriminatory. Similarly, a district court has enjoined the use of voucher requirements similar to those employed in Wilcox County. United States v. Ward (W.D.La.1963) 222 F. Supp. 617; United States v. Manning (W.D.La.1962) 205 F.Supp. 172. As the district court in the instant case correctly pointed out, the voucher requirements in the Ward and Manning cases did not come into play until the parish registrar challenged the applicant. In those cases there was evidence that the registrar challenged only Negroes, thus making out a case for the discriminatory application of the voucher provision. However, we do not view that distinction as dispositive. We think that what this Court said in an analogous context in Meredith v. Fair is directly applicable to the instant situation:

> "The fact that there are no Negro alumni of the University of Mississippi, the manifest unlikelihood of there being more than a handful of alumni, if any, who would recommend a Negro for the University, the traditional social barriers making it unlikely, if not impossible, for a Negro to approach alumni with a request for such a recommendation, the possibility of reprisals if alumni should recommend a Negro for admission, are barriers only to qualified Negro applicants."

298 F.2d at 702. In such circumstances as these, it was unnecessary for the Government, in order to entitle it to injunctive relief, to adduce detailed proof that it was more difficult for Negroes to obtain white persons to serve as their supporting witness or to show numerous instances of

refusal by white registrants to vouch for Negroes.[3] We think the court is justified in taking note of the discriminatory effect of such a requirement in circumstances such as those presented in the instant case. See Meredith v. Fair, supra, at 701.

We now reach the question of relief. In view of our conclusions, the Government is clearly entitled to a preliminary injunction against the use of the supporting witness requirement, at least for a time. The duration of any such injunction we leave to the discretion of the trial court.[4] In addition, the Government is entitled to a preliminary injunction against any other discriminatory acts or practices by the Wilcox County Board of Régistrars.

▮▮ The United States, on its motion for a preliminary injunction, also requested a finding that the Board's discriminatory practices were pursuant to a pattern and practice. Such a finding would automatically bring into play section 1971(e), which entitles Negro applicants who have been rejected by the County Board to a court order registering them if they can satisfy the valid requirements of state law. In such a situation, the district court may appoint a voter referee to handle applications to the court. While we have held that the district court is not justified in pretermitting the question whether discriminatory conduct by registrars constitutes a pattern and practice on motion for a preliminary injunction, see United States v. State of Mississippi (5 Cir. 1964) 339 F.2d 679, we think that as a general rule the district court should pass initially upon this question, see United States v. Fox (5 Cir. 1964) 334 F.2d 449. In the instant case, the district court's finding that there existed no pattern and practice of discrimination in the process of voter registration in Wilcox County followed automatically from his conclusion as to the validity of the supporting witness requirement. In the peculiar circumstances of this case and since this is not an appeal from a final judgment, we think we are justified in remanding the case to the district court for an expeditious consideration of this question in light of our conclusion here, other recent decisions of this Court, and subsequent developments in Wilcox County. We note, however, that the record as it presently stands would warrant a finding of a pattern and practice, unless strong countervailing proof can be elicited by the defendants.[5] Likewise, we defer to the district court with respect to the question of the propriety of relief based on freezing. See United States v. Fox, supra; United States v. Duke (5 Cir. 1964) 332 F.2d 759. We think that on this issue the parties are entitled to a more fully developed record.

3. The record discloses only one instance in which a Negro attempted to obtain a white voter as a supporting witness. He was rebuffed. We think this incident, together with the fact that county officials and employees usually vouched for white applicants, merely bears out the obvious—the voucher requirement as applied in Wilcox County imposes heavier burdens on Negro than white applicants.

4. In United States v. State of Mississippi (5 Cir. 1964) 339 F.2d 679, 684–85, this Court directed the entry of a freeze order which would have had the effect of suspending the operation of certain of Mississippi's registration statutes in the county in question. The Court suggested that such suspension continue in effect for one year from the district court's order provided that court satisfied itself that reasonable opportunities were afforded applicants during that period. This one-year period was equated by this Court with the one-year period in 42 U.S.C.A. § 1971(e), which relates to court-ordered registration.

5. The phrase "pattern and practice" as used in § 1971(e) has been defined as a discriminatory practice which "was not an isolated or accidental or peculiar event," but "an event which happened in the regular procedures followed by the state officials concerned." Hearings Before the House Committee on the Judiciary on H.R. 10327, 86th Cong., 2d Sess. 13. See also United States v. State of Mississippi, supra; United States v. Mayton (5 Cir. 1964) 335 F.2d 153.

The denial of the motion for a preliminary injunction is reversed and the case remanded to the district court for further proceedings consistent with this opinion.

Reversed and remanded.