**UNITED STATES of America,**
**Appellant,**

v.

**Wilbur G. WARD, Circuit Court Clerk and Registrar, George County, Mississippi, et al., Appellees.**

**No. 21717.**

United States Court of Appeals
Fifth Circuit.

May 25, 1965.

Rehearing Denied June 24, 1965.

Peter Smith, Harold H. Greene, Attys., Dept. of Justice, Washington, D. C., Robert E. Hauberg, U. S. Atty., Jackson, Miss., John Doar, Acting Asst. Atty. Gen., Frank E. Schwelb, Gerald P. Choppin, Peter S. Smith, Attorneys, Department of Justice, Washington, D. C., for appellant.

Peter M. Stockett, Jr., Sp. Asst. Atty. Gen., Jackson, Miss., William T. Bailey, Lucedale, Miss., William A. Allain, Asst. Atty. Gen., Jackson, Miss., Joe T. Patterson, Atty. Gen., of State of Mississippi, for appellees.

Before WOODBURY,* WISDOM, and BELL, Circuit Judges.

BELL, Circuit Judge.

This appeal involves the right of Negroes to vote in George County, Mississippi. It is from an order of the District Court granting only partial relief.

* Of the First Circuit, sitting by designation.

On April 13, 1962, the Attorney General, acting in the name of the United States, filed a complaint against Eldred W. Green, Circuit Court Clerk and Registrar of George County; and the State of Mississippi, under 42 U.S.C.A. § 1971, as amended by Part IV of the Civil Rights Act of 1957 and Title VI· of the Civil Rights Act of 1960. The complaint alleged that the defendants had engaged in racially discriminatory acts with respect to voter registration. It was alleged that more stringent standards were applied to Negro applicants for registration than to white applicants, that Negroes were arbitrarily denied the opportunity to register, that the Registrar failed and refused to afford Negro applicants the same opportunity to register as was afforded to white applicants, and failed and refused to register Negroes who possessed the same or similar qualifications as white applicants who had theretofore been registered. It was said that these deprivations were pursuant to a pattern and practice. The prayer of the complaint was for findings that the acts and practices described were racially discriminatory, constituted deprivations of the right to vote secured by 42 U.S.C.A. § 1971(a), that such deprivations were pursuant to a pattern and practice, and for injunctive relief.

On April 24, 1962, the District Court restrained defendant Green from applying different and more difficult tests to Negroes than whites, delaying or refusing to register qualified Negroes, requiring Negroes to name members of the county executive committee, the election commissioners and other officials as a part of the test for registration; requiring Negroes to meet with the election commissioners in order to register; and from registering only citizens with whom he was personally acquainted.

After a period of skirmishing through the use of the Federal Rules of Civil Procedure, the defendants filed their answer on December 13, 1962 denying the alleged discriminatory acts and practices, challenging the jurisdiction of the court and the constitutionality of 42 U.S.C.A.

§ 1971(b), (c), (d) and (e). On January 23, 1964 the defendants filed, without success, separate motions to dismiss the complaint on the ground that the State Board of Election Commissioners had accepted defendant Green's resignation as registrar on January 22, 1964 and had appointed Wilbur Ward as his successor on the same date.

The case came on for final hearing on January 27, 1964 and the District Court entered its findings of fact and conclusions of law and order on February 19, 1965. Ward had previously been substituted for Green as a party defendant.

The voting age population of George County by race, as of the 1960 census, was 5,276 whites and 580 Negroes. There were 24 Negroes on the voter registration books at the time of the trial. The number of whites on the books exceeded 5,276, no doubt due to a failure to purge the rolls of those who had died or moved away. The most recent re-registration of voters in the county was in 1935. Eight Negroes were registered in that year, two in 1936, one in 1939, one in 1943, one in 1947, one in 1955, five in 1962 and four in 1963. Between 1955 and the entry of the restraining order of April 24, 1962, only one Negro was registered. The Registrar in office for the period 1948 to January 1956 registered 397 whites and one Negro. The Registrar from January 1956 to January 1960 registered 1,349 whites and no Negroes. From the inception of his term in 1960 until he began to retain application forms on May 21, 1960, Registrar Green registered 77 whites and no Negroes. At the time of the trial, 685 written applications for registration were on file in the Registrar's office, dating from May 21, 1960 to December 30, 1963. These show that during the portion of this period ending with the date of the restraining order, April 24, 1963, Mr. Green registered 281 whites and no Negroes, while rejecting two whites and 15 Negroes. After the entry of the restraining order and during the remainder of the period, he accepted 351 whites and

9 Negroes while rejecting 10 whites and 17 Negroes.[1]

Considerable evidence was adduced on the trial demonstrating that illiterate and semi-literate whites were registered both before and after the date in 1955 when the statutory standards for registration were changed, and after which date a greater degree of literacy was required. Moreover, it was clear that Mr. Green assisted whites in registering but not Negroes. This assistance was in the form of suggestions as to answers, and leniency in grading. Additional discrimination against Negroes came in the form of assigning white applicants sections of the state constitution for interpretation which were simpler in form than those given to Negroes. Negro applicants were told on occasion that the registration books were closed, or that they would have to meet with a committee or simply that they could not register. One Negro applicant was told that he would have to file a statement certifying his desire to register which statement would be presented to the election commissioners. There is evidence that discrimination in the form of assigning Negroes more difficult sections of the constitution transpired even after the entry of the restraining order. For example, 64 percent of the white applicants were assigned § 30 of the constitution, the simplest section of the constitution used by Mr. Green, to interpret while only 24 percent of the Negroes were given this section.

The testimony of Mr. Ward indicates that he intended to conduct the office of Registrar without discrimination. He would strike any white person from the voter rolls who had admitted at the trial that he was unqualified, but he did not plan to investigate unqualified applicants who did not testify at the trial. His purpose would be to follow the Mississippi law in the operation of his office, including the constitutional interpretation requirements. He submitted an affidavit to this court under date of March 25, 1965 showing that during his tenure in office 195 people had applied for registration; 191 white and 4 Negroes, and that he had registered 170 of the whites and 2 of the Negroes while rejecting the others. The percentage of the voting age Negroes who were registered had increased from approximately two percent at the time of suit to three percent at the time of trial, a period of nearly two years.

The District Court found as a fact that Registrar Green had desisted from most of his discriminatory practices after the entry of the restraining order, but had continued to illegally assist white registrants, and had wrongfully passed a number of white illiterates. The Registrar was permanently enjoined from discriminating in the administration of the registration law, including the processing, testing, grading and notification of applicants. The use of sections of the state constitution for interpretation was restricted to 25 to be selected by the Registrar and which could be readily understood by the average voter in George County, with the added requirement that the sections be drawn at random by the applicant from a container. No persons were to be registered who could not read and write reasonably well, and who could not give reasonably satisfactory answers to the questions contained on the official application form. No help was to be given to any applicant except as to answering questions regarding the proper use of the form. The Registrar was directed to request the election commissioners to examine the registration records and to expunge the names of all illiterates thereon. The United States was given access to the registration records, and permission to make copies of them every four months during the next ensuing twelve months.

---

1. These facts should be considered in the light of the progressively more onerous requirements for registration under the Mississippi law. See United States v. Duke, 5 Cir., 1964, 332 F.2d 759, for a summary of these requirements. The facts of this case demonstrate that Negro applicants have made little progress toward registration whatever the requirements.

The State of Mississippi was dismissed as a party defendant, and the court failed to make a finding as to a pattern or practice under § 1971(e). This action and inaction of the court is assigned as error. The failure of the District Court to give relief in the form of freezing so as to afford Negro applicants the opportunity to register under the same standards applied to whites already on the voting rolls was also assigned as error. In addition, and this relief was sought for the first time in a proposed decree submitted to the District Court after trial, it is urged that the District Court should have ordered the registration of nine named Negro applicants who had filled out application forms demonstrating that they were as qualified as whites whose applications for registration had theretofore been accepted.

## I.

■ The District Court erred in dismissing the complaint as to the State of Mississippi. The contention that § 601 (b) of the Civil Rights Act of 1960, 42 U.S.C.A. § 1971(c),[2] either does not authorize suits by the United States against a state, or, in any event is unconstitutional has now been settled by the Supreme Court adversely to defendants. United States v. Mississippi, 1965, 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717. The court pointed out that the language of the statute clearly permits the United States to sue a state in a suit such as this, and that the Fifteenth Amendment gave Congress the power to so provide. It was noted that the law for many years has been that the United States may institute proceedings against states to protect federally guaranteed rights of citizens.

This authority is over and above the necessity of joining the state in a suit requesting relief in the form of freezing.

See United States v. State of Mississippi (Walthall County), 5 Cir., 1964, 339 F.2d 679; and United States v. Duke, supra.

## II.

■ The District Court also erred in failing to make a specific finding that the disclosed discrimination against Negroes in the voter registration process was pursuant to a pattern and practice. It is now settled that such a finding, where sought, must be made, and may not be pretermitted. This follows from the clear language of the statute, 42 U.S.C.A. § 1971(e):

"(e) In any proceeding instituted pursuant to subsection (c) of this section in the event the court finds that any person has been deprived on account of race or color of any right or privilege secured by subsection (a) of this section, the court shall upon request of the Attorney General and after each party has been given notice and the opportunity to be heard make a finding whether such deprivation was or is pursuant to a pattern or practice. * * * "

See our express holdings to this effect in United States v. State of Mississippi (Walthall County), supra; and United States v. Logue, 5 Cir., 1965, 344 F.2d 290. See also United States v. Mayton, 5 Cir., 1964, 335 F.2d 153.

■ In United States v. Fox, 5 Cir., 1964, 334 F.2d 449, and United States v. Logue, supra, we deemed it the better practice to remand for consideration of this question in the first instance by the District Court. However, the appeals there were from motions for preliminary injunction. Here the appeal is from an order entered after a final hearing and we think good judicial administration

---

2. In pertinent part:
"* * * Whenever, in a proceeding instituted under this subsection any official of a State or subdivision thereof is alleged to have committed any act or practice constituting a deprivation of any right or privilege secured by subsection (a) of this section, the act or practice shall also be deemed that of the State and the State may be joined as a party defendant and, if, prior to the institution of such proceeding, such official has resigned or has been relieved of his office and no successor has assumed such office, the proceeding may be instituted against the State."

warrants, if indeed it does not dictate, final disposition in light of the complete record. We hold that the evidence as a matter of law demands a finding that the discrimination here in issue was pursuant to a pattern and practice within the meaning of § 1971(e), supra.

## III.

■ Discrimination having been found in the voter registration process in George County against Negro applicants, and it having also now been held that such deprivation of rights thereunder was pursuant to a pattern and practice, we come then to the question of the relief to be accorded. The United States sought relief in the form of freezing. For a discussion of the freezing principle, see United States v. Duke, supra, and the authorities there cited. We hold that it was error for the District Court not to have granted such relief.

Defendants rely on United States v. Atkins, 5 Cir., 1963, 323 F.2d 733, where this court held that relief by way of the freezing principle would be appropriate only where there was no alternative whereby justice could be obtained, and suggested that purging the registration rolls of improperly registered whites might be such an alternative. See discussion in United States v. State of Louisiana, E.D. La., 1963, 225 F.Supp. 353, 396–397, aff'd, 1965, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709, outlining the deficiencies of purging. Thereafter in United States v. Duke, and United States v. State of Mississippi (Walthall County), both supra, this court invoked the freezing principle to afford relief under circumstances similar to those here presented. Further light was shed on this problem and principle by the Supreme Court in affirming the freezing relief granted in United States v. State of Louisiana, supra. Justice Black, speaking for the court, said:

"This leaves for consideration the District Court's decree. We bear in mind that the court has not merely the power but the duty to render a decree which will so far as possible

eliminate the discriminatory effects of the past as well as bar like discrimination in the future. * * *"

We hold that freezing must be invoked in this case on remand in the form and manner outlined in the decree which is to be entered. See Part V, infra.

## IV.

■ We come now to consider whether the court erred in having failed to order the registration of the nine named Negro applicants on the basis of their prior applications in the light of treatment theretofore accorded white applicants. We think the relief to be accorded under the decree that is to be entered on remand is an adequate vehicle for the vindication of the right of the applicants to register and the disposition of this phase of the case is thus left for disposition under that decree.

These applicants may follow the plan promulgated in the decree along with all other Negro applicants who may wish to seek registration. However, their applications should be promptly reconsidered, and they should be registered without delay if they meet the standards set out in the plan.

## V.

The United States has submitted a suggested decree at our request for entry on remand. Defendants responded to it at our request, and have filed written objections to some parts of it. This matter has had our careful consideration, and has been weighed in the balance of the long delay since suit was filed, the discrimination shown in the record, and the relative ease with which the small number of Negroes of voting age in George County (580) may be accommodated for registration. The District Court is directed upon remand to enter forthwith the following judgment in this matter, the form and substance of which is to some extent analogized with our decisions in the Duke and Walthall County cases.

"In accordance with and pursuant to the opinion of the United States Court of Appeals for the Fifth Cir-

cuit in the within matter, this court finds that the successive registrars of voters of George County, Mississippi have engaged in acts and practices which have deprived Negro citizens of George County of their right to register to vote without distinction by reason of race, and that such deprivation has been pursuant to a pattern or practice of discrimination against Negro citizens in the registration processes in George County, Mississippi.

"By virtue of and pursuant to the mandate of the United States Court of Appeals for the Fifth Circuit in this cause, it is ordered, adjudged, and decreed by the Court that Defendants Wilbur G. Ward, the State of Mississippi, their agents, officers, employees and successors in office be and each is hereby permanently enjoined from

"1. Engaging in any act or practice which involves or results in distinctions based on race or color between Negro citizens and other citizens in the registration for voting process in George County, Mississippi.

"2. Determining the qualifications of citizens in George County, Mississsippi in any manner or by any procedure different from or more stringent than the following which have heretofore been used by registrars of George County and their agents in determining the qualifications of white applicants:

"(a) He is a citizen and is or will be 21 years of age or older at the time of the next election;

"(b) He, at the time of the next election, has or will have resided in the State two years and in the election district in which he intends to vote one year;

"(c) He embraces the duties and obligations of citizenship as demonstrated by his willingness to take and sign the oath to bear allegiance to the Constitution of the United States and the State of Mississippi; provided, however, that any errors or omissions in filling out or signing the oath on the application form shall not be a basis for rejection, except that an applicant may be rejected if he refuses to sign the oath (or affirmation) after being specifically requested to sign the oath and being shown by the registrar or his agent where to sign;

"(d) He is not disqualified by reason of conviction of a disqualifying crime, insanity or idiocy;

"(e) He is able to demonstrate a reasonable ability to read and write by completion of Questions 1–18 of the application form with assistance by the registrar or his agents, as needed, and as has heretofore been given to white registrants; provided, however, the section of the Mississippi Constitution to be copied shall be selected by lot but in no event shall an applicant be required to copy any section which exceeds four lines as printed in the Mississippi Constitution, Mississippi Code of 1942;

Provided further that no applicant shall be rejected for an error or omission in his application which is not material in determining whether the applicant meets the substantive requirements set out in paragraph 2(a), (b), (c), and (d); nor shall any applicant be rejected for any other error or omission relating to his substantive qualifications as set forth in paragraph 2(a), (b), (c), and (d) in his application unless such error or omission has been specifically pointed out and explained to him by the registrar or his agent and the applicant refuses to supply the requested information.

"The provisions of this paragraph (2) shall remain in full force and effect until such time as:

"(a) The proper local officials of George County, Mississippi, order an entirely new registration of all

voters in George County. No such registration shall take place, however, until the officials conducting the registration shall notify all of the parties to this suit of the requirements, standards, and procedures to be used for such re-registration by the filing of a petition or motion, and until a hearing can be held by this Court and findings made that the requirements, standards and procedures to be used insure that such re-registration will comply fully with the Constitution and laws of the United States and the valid constitutional provisions and laws of the State of Mississippi and that no discrimination by reason of race or color will be made in the administration of the registration procedures in said new registration; In the event of such a new registration, each applicant shall be subjected to the same procedures and be required to meet the same standards as every other applicant without regard to whether or when he had been previously registered to vote; or

(b) It has been shown to the satisfaction of this Court that the effect of the pattern or practice of discrimination against Negroes seeking to register to vote in George County have been overcome. No such showing, however, may be made to this Court until after one year from the entry of this judgment. Any modification of the requirements of this paragraph (2) shall be consistent with the provisions of § 101(a) of the Civil Rights Act of 1964, and any amendment thereto.

"3. It is further ordered that defendant Wilbur G. Ward, his agents, employees, and successors, in conducting registration of voters in George County, Mississippi, are enjoined and ordered to:

"a. Afford each applicant for registration an opportunity to apply and complete the application form whether either the registrar or deputy registrar is present;

"b. Advise each applicant, when he or she applies, whether the applicant is accepted or rejected; if accepted, the applicant must be registered at that time; If rejected the applicant must be informed of the reason or reasons for his rejection and must be advised of his right to apply directly to this Court to be registered as provided in paragraph (4) hereof.

"c. Receive and process each applicant as expeditiously as possible to the extent that the physical facilities of the registration office permit but in no case less than three applicants at one time and in no case refuse to process fewer than three applications at one time. The office of the registrar shall be open during the office hours observed by defendant Ward in his capacity as the clerk of the courts of George County for registration from Monday through Friday of each week except on holidays during the twelve month period following the entry of this order.

"4. Any applicant for registration hereafter rejected or not given the opportunity to apply by the defendant Ward, his agents, employees, or successors, may in accordance with 42 U.S.C. 1971(e) apply to this court, or to a voting referee to be appointed by and in the discretion of this court no more than 20 days after receipt by the court of the first application, to have his qualifications determined. The court or such referee shall register all such applicants who meet the standards established in this order.

"5. It is further ordered that the defendant Ward, his agents, em-

ployees, and successors in office shall file a written report with the clerk of this Court and shall mail a copy thereof to the Plaintiff's attorneys on or before the fifth day of each month. Said reports shall contain the name and race of each applicant for registration from the previous monthly period, the date of the application, the action taken on the application, and if the applicant is rejected, the specific reason or reasons for rejecting the application. The first of such reports shall be submitted on the fifth day of the month following the date of this order and shall cover and include the aforementioned information for the period from the date of the last application form, presented at the trial of this case on January 27 and 28, 1964, through the month immediately preceding the issuance of the first report: Provided however that defendant Ward shall be allowed twenty days from the date hereof to file the first report in the event twenty days would not be available otherwise under the provisions of this paragraph.

"6. The defendant Ward, his deputies, agents, and successors in office shall, until further order of this Court, make the registration records of George County, Mississippi available to attorneys or agents of the United States at any and all reasonable times in the circuit clerk's office in Lucedale for the purpose of inspection, copying, and photographing.

"7. Jurisdiction is retained of this cause for all purposes and especially for the purpose of issuing any and all additional orders as may become necessary or appropriate for the purposes of modifying and/or enforcing this order.

"8. Costs in this Court are awarded to plaintiff."

Reversed and remanded for further proceedings not inconsistent herewith.