UNITED STATES of America, Petitioner,

v.

Theron C. LYND, Circuit Clerk and Registrar of Forrest County, State of Mississippi, Respondent.

Nos. 19576, 22477.

United States Court of Appeals Fifth Circuit.

June 16, 1965.

John Doar, Asst. Atty. Gen., D. Robert Owens, Harold H. Greene, Attys. Dept. of Justice, Washington, D. C., for petitioner.

M. M. Roberts, Francis T. Zachary, Hattiesburg, Miss., Peter M. Stockett, Jr., Dugas Shands, Asst. Attys. Gen., Joe T. Patterson, Atty. Gen., Jackson, Miss., for respondent.

Before BROWN, WISDOM, and BELL, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This proceeding for civil contempt for disobedience of the orders of this Court is an outgrowth of the Government's suit for injunction forbidding racial discrimination by Respondent Theron C. Lynd, Registrar of Forrest County, in the Registration of Negro citizens, the appeal therein being this. day decided. United States v. Lynd, 5 Cir., 1965, 349 F.2d 785, Docket No. 22477.

The history traced briefly in that opinion reflects the tortuous path of this effort to vindicate this clear constitutional right. United States v. Lynd, 5 Cir., 1962, 301 F.2d 818, cert. den., 371 U.S. 893, 83 S.Ct. 187, 9 L.Ed.2d 125, 1963, 321 F.2d 26. Simultaneously with the latter opinion remanding the case for an early trial on the merits, we entered the order of July 15, 1963, adjudging Lynd guilty of contempt. Besides compelling compliance with our 1962 orders prohibiting racial discrimination, the sanctions imposed forbad rejection of applications for errors or omissions if the applicant satisfied seven specified qualifications, required nondiscriminatory selection from a list of 14 sections of the Mississippi Constitution, and prescribed that Lynd and his deputies notify any rejected applicant "of the specific deficiency or deficiencies and afford such applicant the opportunity to correct the error or omission and supply the needed information with respect to the" specified qualifications. We also provided that our orders of April 1962 and July 15, 1963, were effective until final disposition of the case by the District Court. About the time of the further trial on remand the Government on April 15, 1964, filed a petition requesting additional contempt orders because of continued violations subsequent to our July 15, 1963 order. This was supplemented by a similar petition of August 28, 1964. We purposely withheld action in the hope that the decision of the District Court would effectually dispose of such matters occurring up to date of trial. Subsequent to the District Court's judgment of January 20, 1965, a third supplement

was filed March 5, 1965. Upon a show cause order of March 15, 1965, a hearing[1] has now been held on charges of violations occurring between August 11, 1962 through January 19, 1965.[2]

█ As reflected in more detail by our formal findings of fact, we have concluded that Registrar Lynd has violated our orders in several major and significant respects. The unfortunate fact is that despite our orders of April 1962 and July 15, 1963—the latter of which we hoped would be an inducement to eliminate any vestige of discriminatory practices—Negroes have been denied this precious Constitutional right because they are Negroes. There has been improvement, but both on the appeal and contempt, mandatory orders are required to erase discrimination altogether for all time.

We need mention only briefly the more glaring types of discrimination.

In the grading of answers to Questions 19 and 20,[3] the use of a double standard was frequent, glaring and often flagrant.[4] This case graphically demonstrates how such tests are the engine of discrimination. Louisiana v. United States, 1965, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709. Likewise in the selection from the 14 permitted sections of the Mississippi Constitution, there was continued racial discrimination. There was, to be sure, improvement, but significant traces still remained.[5] There was like disparity in grading other answers, such as place of residence and statutory voter residence requirements.

And in the face of our contempt order of July 15, 1963, requiring that he give assistance to applicants by pointing out

1. By previous order the appeal, Docket No. 22477, and the contempt citations, Docket No. 19576, were consolidated for hearing and argument at New Orleans June 14, 15, 1965.

2. The record on the contempt case comprises oral testimony and documentary exhibits offered June 14, 15, 1965; the full transcript (with exhibits) of the 1961–62 and April 1964 trial in the District Court; and the transcript of our five-day contempt hearing at Hattiesburg, September 1962. This record exceeds 1000 pages of testimony and several thousand exhibits. Over 50 witnesses have testified in person before us.

3. Q. 18 requires the applicant to "write and copy" a section of the Mississippi Constitution selected by the Registrar.
   Q. 19 states: "Write * * * a reasonable interpretation (the meaning) of the section" copied in Q. 18.
   Q. 20 requires "Write * * * a statement setting forth your understanding of the duties and obligations of citizenship under a constitutional form of government."

4. See, e. g., A-4 Demonstrative Notebook filed in this record. A white voter's application October 17, 1964, was accepted with Q. 20 answered: "It is the duty of every citizen to be law abiding and vote." A Negro application October 6, 1964, was rejected on this answer: "The duties and obligation of a Citizen under a constitution form of government, that you should be able to vote in all election, pay your

poll taxes respect private property and obey all laws." According to Lynd's June 1965 testimony, he now says the white answer was not adequate and should have been rejected. See B–4, as to Sec. 16 of the Constitution:
   "Ex post facto laws, or laws impairing the obligation of contracts, shall not be passed."
According to Lynd, not a lawyer, the important thing was impairment of contracts. He rejected many Negroes who gave answers worthy of a law review editor on ex post facto laws. He accepted a white answer, "that all laws such as ex post facto laws impairing obligations of contracts cannot be passed" while rejecting this perfect Negro answer: "If a person has committed a crime he cannot be convicted of a crime if no such law exist. No law can be passed right then for that person. No law shall be passed to impair contract's obligation."

5. The figures themselves are startling as to some long "hard" sections opposed to some short "easy" sections, and when figures talk, Courts listen. State of Alabama v. United States, 5 Cir., 1962, 304 F.2d 583, 586, aff'd, 1962, 371 U.S. 37, 83 S.Ct. 145, 9 L.Ed.2d 112. But here the Court also had opinion testimony from a statistical expert whose like testimony the District Court erroneously rejected out of hand on the ground it invaded the province of the Court. The weight of such testimony is, of course, a different matter. Our conclusion was reached, however, independent of these opinions.

errors, omissions, or other deficiencies in the application, Lynd handed to applicants for a substantial time a printed card [6] and posted a large printed sign [7] which plainly stated the contrary. Equally important, this message discouraged these persons from even asking for this court-ordered assistance. Moreover, with or without signs or cards, Lynd's practice was to afford no assistance although this was plainly required.[8]

■■ Obviously the denial of these rights—at one and the same time a violation of the Constitution and the orders of this Court—demands correction.

At the snail's pace to date, it will take decades to eradicate the evil.[9] The Judiciary has the power and the duty to fashion appropriate relief. We have done so in the appeal (Docket No. 22477) by directing the entry of a mandatory order. Louisiana v. United States, 1965, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709; State of Alabama v. United States, supra. And sanctions are permissible and called for to coerce compliance. United States v. United Mine Workers of America, 1947, 330 U.S. 258, 303, 67 S.Ct. 677, 91 L.Ed. 884.

By our order [10] in this case, we are requiring the registration of approxi-

6. "You have just filled out an application for registration. THIS DOES NOT REGISTER YOU. You must check back with us in 30 days to see if your application has been accepted or rejected. If accepted you must then sign the registration book personally. If rejected you can then fill out another application. We cannot point out errors to you on rejected applications. You may fill out as many applications as you desire until registered."

This was used from early fall 1963 through January 1964 at which time it was discontinued upon advice of his counsel after protest by the United States.

7. "NOTICE
"STATE LAW REQUIRES
"Application for Registration must be completely filled out without any assistance or suggestions of any person or memorandum.

"After 10 days applicant's names and addresses are published for two consecutive weeks in the newspaper. They cannot be ruled on until 14 days after the second publication. Therefore it can take as long as 33 days before we can give you an answer as to your application being accepted or rejected.

"Your indulgence is appreciated."

8. From July 23, 1963, through December 1964 numerous rejected Negro application show pencilled arrows to errors. The obvious sense of our July 15, 1963 order was to require that such deficiencies be then and there pointed out for immediate correction.

9 Of 29,926 persons of voting age in Forrest County (1960 census), 75% (22,431) are white and 25% (7,595) are Negroes. As of March 1964 the registration was:

|  | White | Negro |
| --- | --- | --- |
| Number | 17,738 | 196 |
| Percent | 74.62% | 2.58% |

From November 1960 through March 1964 acceptance-rejection was:

|  |  | Accepted | | |
| --- | --- | --- | --- | --- |
|  | Applied | Number | Percent | Rejected |
| White | 2,055 | 1,446 | 70.4% | 608 |
| Negro | 1,066 | 135 | 12.7% | 924 |

(Discrepancies in figures due to some applicants not being positively identified as to race.)

From August 1962 through January 20, 1965 it was:

|  | Applied | Accepted |
| --- | --- | --- |
| White | 1,620 | 914 |
| Negro | 1,835 | 281 |

10. Set out in the appendix; the names on Attachment A are deleted as unnecessary for publication.

mately 280 applicants, subject to deletion of those shown to be disqualified under a procedure similar to that approved in State of Alabama v. United States, supra, 304 F.2d at 594. As to this group, we have not taken into account the answers to Questions 19 and 20 (note 3, supra). Of course, our order of July 15, 1963, permitted their non-discriminatory use. But in view of the discrimination in the five categories discussed, we think it appropriate that the sanctions imposed require registration of these applicants. As immediate and clearly identifiable subjects of discriminatory practices, this will put them on a parity with those who will apply in the future and as to whom the injunctive order in No. 22477 forbids use of Questions 19 and 20.

For like reasons, we think it appropriate that as a sanction we require the conspicuous posting of the District Court's order when entered pursuant to our mandate in No. 22477. All—and this includes voter applicants, Registrar Lynd and his staff, and interested citizens—will know precisely what is expected.

■ Only a tag end remains. A question is raised as to our considering both the contempt and the appeal case. The answer to that is simple and twofold. First, the contempt concerns violation of our orders up to January 19, 1965, the day before the District Court's judgment, since our orders were expressly viable to that time. Second, the District Court's judgment had a built-in suspension clause.[11] Obviously, it would have been intolerable that through a judgment having no worthwhile effect, the power of orders would simultaneously evaporate.

The order and mandate of the Court shall issue forthwith.

11. The judgment of January 20, 1965, provided:
"This judgment shall be and become effective only after the United States Court of Appeals for the Fifth Circuit completes its handling of all matters in this case presently pending before said Court."

## APPENDIX

This matter having come on for a hearing on June 14 and 15, 1965, on the Order requiring Theron C. Lynd to show cause why he should not be held in civil contempt of this Court, and all parties having been represented by counsel in open court, and the Court having filed its findings of fact which are incorporated by reference, it is:

1. Adjudged that Theron C. Lynd, Respondent, is guilty of civil contempt of this Court for violation, after notice and service thereof of the orders of this Court of April 10 and 16, 1962, and the Judgment and Order of Civil Contempt of July 15, 1963.

2. It is further ordered and adjudged that Theron C. Lynd, Respondent, in order to purge himself of civil contempt of this Court as herein declared and as prescribed in the judgment of July 15, 1963, shall:

a. Register forthwith and place upon the current voter registration rolls of Forrest County, Mississippi, and do all other acts necessary to complete the registration for voting in Forrest County, the Negro citizens listed in Attachment A to this judgment and order and herein incorporated, all of whom applied for and were improperly denied registration in Forrest County, Mississippi, in violation of this Court's orders. Such registration shall be effective in all respects and for all purposes as of the date of the most recent application forms of these respective citizens.

b. Notify each of said citizens listed in Attachment A by United States Mail, postage prepaid, that they are now registered voters and identify to them the effective date of their registration. Respondent Lynd shall not require any of these applicants to return to his office to complete their registration.

c. Remove forthwith the sign in his office suggesting that applicants may not receive assistance.

d. Post in his office in a conspicuous place where it may be read by applicants a copy of the Order entered by the United States District Court for the Southern District of Mississippi pursuant to the mandate of this Court in Docket No. 24777.

e. Within twenty (20) days of the date of this Order and Judgment, file with the Clerk of this Court a written signed report showing that he has complied with Paragraph 2a, b, and c of this Judgment, and that he will hereafter faithfully abide by and comply with this Order. Filing of this statement and compliance therewith shall not restrict or abridge the right of Theron C. Lynd to appeal from the Judgments or Orders therein enumerated or to contest the validity thereof in a Court of appropriate jurisdiction.

3. As to any applicant who, since the date of his last application, has subsequently become disqualified by reason of conviction of a disqualifying crime, insanity, or idiocy, change of residence, or upon death of such applicant, or who is not entitled to register because of lack of citizenship, age, residence or conviction of a disqualifying crime, the Respondent, Theron C. Lynd, need not take the action prescribed in Par. 2a and b above. But he shall in writing and under oath submit to this Court within 20 days hereof the detailed facts respecting such claimed disqualification for approval or disapproval by the Court. Upon the disapproval of any such claimed disqualification by the Court he shall within 10 days of the date of such order comply with Par. 2a and b, and file a report of compliance within 5 days thereafter.

4. It is further ordered and adjudged that all costs of this proceeding taxable as Court costs are taxed against Theron C. Lynd and shall be paid within 60 days after assessment by the Clerk of this Court.