**UNITED STATES of America,**
**Appellant,**

v.

**A. L. RAMSEY, Circuit Court Clerk and Registrar, Clarke County, Mississippi, and State of Mississippi, Appellees.**

**Ex parte: In the Matter of the UNITED STATES of America, Petitioner.**

**No. 22315.**

United States Court of Appeals
Fifth Circuit.

Nov. 12, 1965.

---

2.  Henry v. Coahoma County Board of Education et al., 246 F.Supp. 517.

See also 5 Cir., 331 F.2d 824.

William A. Allain, Asst. Atty. Gen., State of Mississippi, Jackson, Miss., Tally D. Riddell, Quitman, Miss., Joe T. Patterson, Atty. Gen. of State of Mississippi, Peter M. Stockett, Jr., Sp. Asst. Atty. Gen. of State of Mississippi, Jackson, Miss., for appellees.

Before HUTCHESON and BROWN, Circuit Judges, and MORGAN, District Judge.

JOHN R. BROWN, Circuit Judge.

The second appeal (plus the parallel proceeding for mandamus)[1] in a case filed by the Government in 1961 presents for determination the question whether the District Court, having found flagrant discrimination against Negroes in voter registration in Clarke County, Mississippi, has accorded effective, timely adequate relief. We hold in the negative and reverse with directions.

As framed in the outset of this appeal, the Government's criticism was twofold: the trial Court's failure (1) specifically to find pattern and practice, 42 U.S.C.A. § 1971(e), and (2) to apply the freezing principle so that Negroes currently applying would be tested, not by the newer and more exacting standards presumably being applied uniformly without distinction as to both whites and Negroes alike, but by the more lax standards long accorded to whites.[2]

Now time has wreaked change. First, Ramsey has been succeeded as Registrar by Mrs Evie Harris. Second, and more important, Congress has twice since 1961 markedly changed the law by the enactment of the Civil Rights Act of 1964,[3] and, more significantly—and more

Harold H. Greene, Gerald P. Choppin, Attys., John Doar, Asst. Atty. Gen., Charles Nenan, Atty., Dept. of Justice, Washington, D. C., Robert E. Hauberg, U. S. Atty., David Rubin, Atty., Dept. of Justice, Washington, D. C., for appellant.

1. The mandamus proceeding, Ex Parte: In the Matter of The United States of America, Petitioner, was consolidated with the appeal for purposes of argument and briefing by per curiam order of the Court on May 13, 1965.

   Out of the initial District Court trial also came the Grand Jury problems dealt with in United States v. Cox, 1965, 5 Cir., 342 F.2d 167 (en banc).

2. The Government also attacks the trial Court's order for requiring monthly reports of *Negro* applicant *rejections* only, rather than reports as to all (white and Negro) both granted and rejected.

3. 78 Stat. 241 (1964), amending 42 U.S.C.A. § 1971 by adding §§ 1971(a) (2), (3), by providing for a rebuttable presumption of literacy in § 1971(c), and by adding §§ 1971(f), (h).

recently, the Voting Rights Act of 1965.[4] The result is that the Government, insisting quite properly that we must now apply the new law,[5] now urges that in spelling out standards the decree must speak in terms of the 1965 Act.[6] Time has also been working in Mississippi, and working for good. By constitutional amendments [7] approved overwhelmingly by her people and by legislation,[8] Mississippi has adopted a simplified procedure and standards, and now the only prerequisites for registration are (a) ability to read and write, (b) citizenship, age and residence, and (c) absence of felony conviction,[9] thus eliminating the good-moral-character, the duties-of-citizenship, and the read-and-interpret requirements which have been the engine of discrimination for so long.[10]

Because of these intervening developments, it is helpful to summarize the background, much of which appears in our prior decision. United States v. Ramsey, 5 Cir., 1964, 331 F.2d 824, modified on rehearing, 331 F.2d at 838.

The suit, filed July 6, 1961, was brought by the Government under 42 U.S.C.A. § 1971(c), asserting long continued discriminatory practices against Negro voters. After a trial on December 26–28, 1962, the District Court on February 5, 1963, entered its judgment. The Court found that Negro citizens had been discriminated against by the Registrar, but that this discrimination did not form a pattern or practice within the meaning of § 1971(e). The Court enjoined the Registrar from engaging in any act or practice which would deprive any citizen in Clarke County of the right to vote on account of his race or color. But the Court declined to grant the freezing relief. Rather it specifically ordered the Registrar to apply to all applicants (white or Negro) the tests currently required by the statutes of the State of Mississippi.[11] On the Government's ap-

---

4.  Pub.L. No. 89–110, 89th Cong., 1st Sess., 79 Stat. 437, 42 U.S.C.A. § 1973 et seq., approved August 6, 1965.

5.  United States v. State of Alabama, 1960, 362 U.S. 602, 80 S.Ct. 924, 4 L.Ed.2d 982; Ziffrin, Inc. v. United States, 1943, 318 U.S. 73, 63 S.Ct. 465, 87 L.Ed. 621; Vandenbark v. Owens-Illinois Glass Co., 1941, 311 U.S. 538, 61 S.Ct. 347, 85 L. Ed. 327.

6.  We have required this express conformity to the 1965 Act in United States v. Ward (Louisiana), 5 Cir., 1965, 349 F.2d 795, by the modified decree specified on rehearing, 352 F.2d 329 [21 day of Oct., 1965].

7.  On August 17, 1965, Miss.Const. § 241-A, requiring that an elector have a good moral character, was repealed and § 244 was amended to provide that an elector be able to read and write, not read, interpret and understand.

8.  Miss.Senate Bill Nos. 1501 (amending Miss.Code § 3209.6 to prescribe a new form of application), 1502 (amending § 3209.7 to require only that applicant be able to read and write), 1503 (amending § 3210 to prescibe a new form for registration books), 1504 (amending § 3212 to exclude reference to the good-moral-character requirement of Miss. Const. § 241-A), 1505 (amending § 3212.5 to eliminate the good-moral-character requirement), 1506 (amending § 3235 to prescribe new qualifications for voters), 1507 (repealing § 3213 which required proof of good moral character and knowledge of constitutional goverment), 1508 (repealing § 3212.7 which provided for publication of applicants' names for purpose of challenging moral fitness), 1509 (repealing §§ 3217–01 to –15 which provided a procedure for affidavit challenge to moral fitness) and 1510 (repealing § 3273 which provided for the giving of assistance to illiterate voters) enacted —— day of ————, 1965.

9.  In order to vote a registered elector must still pay the poll tax for the preceding two years and not be insane. Miss. Code § 3235 (as amended).

10.  E.g., United States v. Lynd (civil contempt), 5 Cir., 1965, 349 F.2d 790, 792, n. 3, 4, 5, as to famed Questions 18 and 19, and United States v. Lynd (appeal), 5 Cir., 1965, 349 F.2d 785, and the previous Lynd decisions therein cited. This structure was attacked in United States v. State of Mississippi, S.D.Miss., 1964, 229 F.Supp. 925, reversed, 1965, 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717.

11.  Of unusual importance, as our discussion later on reveals, the Court specifically enjoined the Registrar from "registering illiterate citizens to vote or allow-

peal, this Court on February 20, 1964, 331 F.2d 824, at 829, modified the judgment by (1) enjoining not only the present Registrar (Ramsey), but also his successors in office and (2) by directing the Registrar to file monthly reports with the Clerk of the District Court as to applications received, granted and rejected.

Thereafter the Government sought a rehearing on this Court's holding that the trial Court "had discretion to omit action" as to the pattern or practice and on the refusal of the trial Court to grant freezing relief. On rehearing this Court found the finding of no pattern or practice clearly erroneous, but in "the light of that holding" it concluded "that the question of further relief should be first ruled on by the District Court" and accordingly denied rehearing as to the freeze order. 331 F.2d at 838.[12]

This sets the stage for the subsequent action in the trial Court now under review. Since no action was taken by the trial Court on receipt of our mandate in May 1964, the Government in August moved for an order to implement our mandate. On December 1, 1964, the trial Court deleted its "no pattern or practice" finding, but declined to find it affirmatively and declined to grant freezing relief.[13]

To review these actions, the Government appealed and to the extent the matters were not reviewable by appeal, subsequently sought and obtained leave to institute the mandamus proceedings. We think all is reviewable by appeal. 28 U.S.C.A. § 1292(1). Thus the mandamus is superfluous, and such proceeding is dismissed.

Coming to the merits, little now need be said in view of the detailed and decisive treatment we have given these issues in United States v. Ward (Louisiana), 5 Cir., 1965, 349 F.2d 795, and the cases there discussed.[14]

Consequently the Court was clearly in error in its handling of pattern and practice. It was not sufficient merely to delete the finding of no pattern and practice. The trial Court had the duty to make the affirmative finding so clearly called for by the facts of this record and to do so in words which to layman, lawyer, judge, voter applicant, and registrar alike set in train the machinery of § 1971(e).[15] 349 F.2d at 801, 805.

For all of the reasons outlined in depth in Ward (Louisiana), we likewise have the same firm conclusions as to freezing relief. In so concluding we necessarily reject the Registrars' contention

ing any citizens who cannot read and write to register" and from "neglecting, delaying, failing or refusing to give the statutory test." For the full decree, see 331 F.2d at 829 (Appendix A).

12. In holding that "when * * * the District Court makes * * * a finding" of no pattern or practice, "it is our obligation to pass on its correctness," we said: "Was the finding that there was no pattern or practice in the discrimination by the Registrar clearly erroneous? The answer to that question must clearly be 'yes.' To this extent, our original judgment is modified. In the light of that holding, we are persuaded in this case that the question of further relief should be first ruled on by the District Court. To the extent indicated by this opinion the petition for rehearing is granted and in other particulars it is denied." 331 F.2d at 838.

13. The Court also (1) ordered the Registrar to file with the Clerk verified copies of all papers and a detailed statement of material facts in each case where a *Negro* applicant was *rejected* and (2) extended its injunctive decree of February 5, 1963, as modified to the successor Evie Harris.

14. These include principally: United States v. Lynd, 5 Cir., 1965, 349 F.2d 785 (appeal); United States v. Lynd, 5 Cir., 1965, 349 F.2d 790 (contempt); United States v. Ward (Miss.), 5 Cir., 1965, 345 F.2d 857; United States v. State of Mississippi (Walthall County), 5 Cir., 1964, 339 F.2d 679; United States v. Mayton, 5 Cir., 1964, 335 F.2d 153; United States v. Duke, 5 Cir., 1964, 332 F.2d 759.

15. To these consequences must now be added the 5-year "cooling off" period of the 1965 Act. See § 4(a).

that the District Judge merely applied the law of the case as declared in our prior opinion and that the same principle, Lincoln Nat'l Life Ins. Co. v. Roosth, 5 Cir. (en banc), 1962, 306 F.2d 110, 113–114, makes it inappropriate for us to scrutinize his holding a second time. Of course this would be so had the rehearing not been granted. The Court initially approved the trial Court's refusal to invoke the freezing principle. But this, it is quite evident, was based upon this Court's acceptance of the discretionary power of the trial Judge to find no pattern or practice. The whole case was changed when, on rehearing, we declared that finding to be clearly erroneous so as to compel—what we now order—the affirmative finding of a pattern and practice. It was in "the light of that holding" (see note 12, supra) that we concluded that the District Court should first pass upon the question of further relief including a freeze order. Indeed, a finding of pattern or practice is not only relevant on the question of relief. It may impose a statutory standard on the extent—both as to time and persons covered—of the judicial freeze order required. United States v. Ward (Louisiana), 5 Cir., 1965, 349 F.2d 795, 804.

■ The facts of this record leave no doubt of the imperative need of a freezing order. Approximately 75% of the white persons registered as of the trial had been registered prior to March 1955 during the time Registrar Ramsey had no requirement or procedures whatever and merely required white registrants to sign the book. His subsequent requirements covering the remaining 25% were not significantly more severe. Many were examined only in a perfunctory way, given assistance where needed in filling out the form and answering the more

difficult constitutional interpretation test, and the like. The unfortunate fact is that the overwhelming number of white persons registered were not required to comply with any of the paper requirements of the Mississippi law.

But Negroes have not fared so well. Indeed, for many years they did not fare at all. The effect of this racial discrimination cannot be eradicated merely by correcting the future through uniform nondiscriminatory tests applied to Negro and white alike. To alleviate this consequence, the case compelled an order extending to all now age-and-residence-eligible not suffering from statutory disqualifications (conviction of felony, etc.) the same lax standards previously applied to whites. Considering the history of this discrimination and the population of the county,[16] the freeze period could not properly have been for less than the two years fixed in Lynd (appeal),[17] 349 F.2d at 788, and in Ward (Louisiana),[18] 349 F.2d at 802, 803–804.

■ The trial Court was also in error in the monthly reporting provision. See notes 2 and 13, supra. Our mandate called for a monthly report as to all applicants, white and Negro, rejected and accepted. It did so for the perfectly natural reason that discrimination is disparate treatment without an adequate basis, and it is frequently the comparison of applications accepted and those denied which starkly reveals the unlawful activity. See United States v. Lynd (contempt), 5 Cir., 1965, 349 F.2d 790, 792 n. 4.

The result is that up to August 6, 1965, we would have reversed with directions to enter a Ward (Miss.), Lynd, or Ward (Louisiana) type of order. What does the 1965 Voting Rights Act do to the case and to the relief required?[19] For

---

16. The record bears out the statistics summarized in Judge Rives' opinion in the prior appeal.

| | White | Negro |
| --- | --- | --- |
| (a) Voting Age Population as of July 1961 | 6,000 | 3,000 |
| (b) Registered as of July 1961 | 5,000 | 3 |

17. See, e.g., Par. 2(e) of the order.

18. See, e. g., Par. 3 of the order, Appendix.

19. As in its petition for rehearing in Ward (Louisiana), see note 6, supra, the Government proposed the entry of a specific decree. The Court thereafter requested the comments and counter proposals of

reasons we briefly indicate, we think the relief now required is markedly different.

■■ On August 7, 1965, the United States Attorney General and the Director of Census made and published (30 Fed. Reg. 9897) the determinations as to Mississippi under § 4(b) of the 1965 Act. The effect of this is to eliminate any state-imposed voter qualification "test or device," § 4(a), including of significance here those requiring demonstration of "(1) * * * ability to read, write, understand, or interpret any matter, (2) * * * educational achievement or * * knowledge of any particular subject, * * *." § 4(c). Likewise, until declaratory judgment or administrative consent is first obtained, § 5 of the Act restricts Mississippi to the use of voter qualifications, practices, or procedures in force and effect on November 1, 1964.

■■ "The result," as we pointed out in Ward (Louisiana), "is that where under our developing 'freeze' principles, we required that the less exacting practices followed" in the past " * * * in the registration of white applicants be extended to all for a period of two years, the 1965 Act extends the period initially to five years and forbids outright for such time every defined voter qualification 'test or device' whether previously applied to whites or not." 353 F.2d at 331 (rehearing). [21 day of Oct., 1965] There is thus an outright conflict be-

tween Mississippi law and the outstanding decree of the trial Court in this very case (see note 11, supra),[20] on the one hand, and the requirement of the 1965 Federal Act on the other. At this stage we must assume the validity of the 1965 Act and its supremacy under the Supremacy Clause. Under § 14(b) of the Act [21] this Court lacks the power at this time to determine the constitutional validity of the Act vis-a-vis the more stringent Mississippi requirements and, indeed, the Registrar expressly disclaimed any purpose to here attack its validity. We are thus not even faced with the narrower question whether the restriction of § 14(b) is valid. In view of this, we see no escape from the application of the plain, literal requirements of the 1965 Act. It is not for us to determine, certainly not at this stage or in this proceeding, whether the wisdom or unwisdom of a fairly administered literacy test gives constitutional protection to Mississippi's legislative determination. At the same time, we think the position of the Registrar is eminently reasonable that our opinion directing the entry of any specific decree reflect on its face that this Court is not undertaking to judge or prejudge any of these matters of validity, constitutionality, or interpretation of the Act. Thus, for example, the Registrar urges that the statutory period of five years—which offhand ap-

counsel for the Registrar. The Court in fashioning the decree set forth in the Appendix has been greatly assisted by this exchange of views and the conference of counsel. The Court's request for collaboration related to form and content dependent on various holdings by the Court. We wish to make clear that counsel for the Registrar forcibly contends that no injunction is needed or should be directed, the appeal should be dismissed because of compliance, and in articulating the standards to be applied, the decree should prescribe those in the new Mississippi statutes (note 8, supra), not the 1965 Federal Act.

20. Although importuned by the Government in Lynd (appeal), 349 F.2d 785 in June 1965 to do so, in none of these

directive decrees has this Court forbidden a fairly administered test of literacy. The trial Court's insistence (see note 11, supra) was likewise quite appropriate.

21. This section provides:
"No court other than the District Court for the District of Columbia or a court of appeals in any proceeding under section 9 shall have jurisdiction to issue any * * * restraining order or temporary or permanent injunction against the execution or enforcement of any provision of this Act * * *."
Under § 9 the courts of appeals are to review decisions of Civil Service Commission hearing officers on challenges to voter eligibility as determined by the federal examiners.

pears to be mandatory—may be subject to reduction or elimination under certain undefined conditions. We agree these matters should be left open. We therefore repeat what we said in Ward (Louisiana) on rehearing. "If by the procedures specified in § 14(b), or otherwise, the law is determined to be invalid or the provisions of the Act applied here are otherwise construed, the decree prescribed herein should be suitably modified. The same is true as to any declaratory judgment determinations by the District Court for the District of Columbia that the use of any such test or device in voter qualification to achieve discrimination has ceased. See, e. g., §§ 4 (a), 5." 352 F.2d at 331.

■ Under these circumstances we think it clearly required that an order as set forth in the appendix be entered by the District Court. Upon our having made the judicial choice that the 1965 Act is thus far controlling, the form and content of the Government's proposed order is substantially acceptable to the Registrar.[22] The point of difference is one of substance, the Registrar insisting that in lieu of the 1965 Federal standards articulated in Paragraph IV, these should be the currently effective Mississippi standards.[23]

Reaching this conclusion, we necessarily overrule the motion to dismiss the appeal filed by the Registrar. When it is all boiled down, it comes to a plea that an injunction is not needed because the Registrar is now in compliance with the law. Without in the least implying any want of good faith, either personally or officially, on the part of this lady who obviously has many official responsibilities and duties to perform with limited staff, budget and physical facilities, we do not think dismissal is appropriate. Although her affidavits show that since the effective dates she has been applying the new, more lax, Mississippi standards (see note 8, supra), and more recently she is complying with the 1965 Federal Act apparently with unquestioned faithfulness even to the point of registering a great number of demonstrated illiterates, several factors are yet significant. At the outset one is that what she has done has been done under the compunction of the statutes, State and Federal, rather than the Court decree. It is the decree, not her performance under it, which the Government has long criticized. In a very real sense the appeal tests, not the correctness of her actions, but rather the asserted errors of the trial Court. Equally important there remains this conflict between Mississippi and Federal law. The rights of Negro voters, so long postponed in this County and which have remained substantially unsatisfied because of the restrictive relief now declared to have been inadequate in this 1961–1965 effort to obtain judicial vindication, ought not at this stage to rest upon the unpredictable continuance of Mrs. Harris in this trying office or upon her or her successors' continued willingness as an official of the State of Mississippi to take action under the 1965

22. Presumably because of the special facts of this situation, the Government agreed to delete from proposed Par. V(b) and (c) typical language requiring the Registrar to advise a rejected applicant of the right to appeal to the Court and to process a specific number of applicants at one time for specified days of the week (see, e.g., Pars. V(c), (d) of Ward (Louisiana) ; Pars. 4(b), (c), 5 Lynd (appeal)). Likewise, although complaining here of the District Court's reporting procedure, it agreed to delete all of proposed Par. VI requiring monthly reports (see, e.g., Par. VII of Ward (Louisiana); Par. 6, Lynd (appeal)). In Par. I we have inserted the recitations as to the certifications under the 1965 Act.

23. The Registrar's proposed alternative provides:
"III. It is further ordered * * * that Mrs. Evie Harris, Registrar * * * and her successors * * * be, and each hereby is enjoined, from determining the qualifications of citizens * * * in any manner or by any procedure different from or more stringent than is *now* prescribed and required by the Constitution, statutes and laws of the State of Mississippi *now* in force." (Emphasis added.)

Federal Act contrary to the express provisions of Mississippi law.[24]

Nor do we think that dismissal of the appeal or incorporation of Mississippi law as the controlling standard in the decree is required here because of the action of the three-Judge District Court in its recent order in the Holmes County case.[25] That Court, applying itself a modified freeze for all rejected applicants back to January 1, 1963, promulgates the standard requiring registration of those "now qualified under the constitution, statutes and laws of the State of Mississippi." [26]

We do not undertake to determine whether the action of that Court is correct or incorrect. Of course each of the two Courts gives careful consideration to the action of the other but under the hierarchical structure, a three-Judge District Court within a Circuit and the Court of Appeals for that Circuit are independent, each being subject to review by the Supreme Court only, and each under an obligation independently to determine the case. See, e. g., 28 U.S.C.A. §§ 1253, 1254, 2284. These considerations are especially pertinent here for we are not advised of the contentions or reasons asserted by the parties or reflected by that record which would pertain to the choice by the Court of the current Mississippi, rather than 1965 Federal, standards. All we have been furnished is a copy of the Court's formal order.

The result is that the case must be reversed with directions to enter the annexed decree and for other consistent action.

Reversed and remanded.

## APPENDIX

### FINAL DECREE

I. This Court finds that the original defendant, A. L. Ramsey, has engaged in acts and practices which have deprived Negro citizens of Clarke County, Mississippi, of their rights secured by 42 U.S.C. § 1971(a), to register to vote without distinction by reason of race, and that such deprivation has been pursuant to a pattern or practice of discrimination against Negro citizens in the registration for voting process in Clarke County, Mississippi. The Court also takes notice of the fact that the United States Attorney General and the Director of the Census have made and published on August 7, 1965 (30 Fed.Reg. 9897), the determinations which invoke the provisions of Section 4 of the Voting Rights Act of 1965, and related provisions (Pub. L.No. 89–110, 89th Cong. 1st Sess., 79 Stat. 437, 42 U.S.C.A. § 1973 et seq.).

II. It is ordered, adjudged and decreed by the Court that Mrs. Evie Harris, Registrar of Voters of Clarke County, Mississippi, her deputies, employees and her successors in office and all persons acting in concert or participation with them be, and each hereby is enjoined from engaging in any act or practice which involves or results in distinctions based on race or color between Negro citizens and other citizens in the registration for voting process in Clarke County, Mississippi.

III. It is further ordered, adjudged, and decreed by the Court that Mrs. Evie Harris, Registrar of Voters of Clarke County, Mississippi, her agents, officers, employees and her successors in office and all persons acting in concert or participation with them be, and each hereby is enjoined, for a period of five years after the entry of any final judgment of any court of the United States determining that denials or abridgments of the right to vote on account of race or color through the use of any "test or device" as defined in section 4(c) of the Voting

24. On argument we were advised that in proceedings in Mississippi Chancery Courts some injunctive orders have been obtained or sought by State officers forbidding compliance with the 1965 Federal Act by certain Registrars.

25. United States v. McClellan, S.D.Miss., 247 F.Supp. 62.

26. This is carried forward in Par. 5 outlining the § 1971(e) voting referee appeal procedure: "The Court or such referee shall register or order the registration of all such applicants who meet the standards established by the constitution, statutes and laws of the State of Mississippi now in force."

Rights Act of 1965, P.L. 89–110, 79 Stat. 436, 437, 438–439, have occurred anywhere within the State of Mississippi, and in any event until the United States District Court for the District of Columbia has determined that no such test or device has been used during the five years preceding the filing of the action for the purpose of denying or abridging the right to vote on account of race or color, from (a) requiring any applicant for voter registration in Clarke County, as a precondition to such registration, to take or pass any test of literacy, knowledge, or understanding or to comply with any other test or device as defined in section 4(c) of the Voting Rights Act of 1965, supra, 79 Stat. 438–439, *i. e.*, any requirement that he (1) demonstrate the ability to read, write, understand, or interpret any matter, (2) demonstrate any educational achievement or his knowledge of any particular subject, (3) possess good moral character, or (4) prove his qualifications by the voucher of registered voters or the members of any other class, or (b) rejecting any applicant for voter registration in Clarke County for failure to comply with any such requirement.

IV. It is further ordered, adjudged, and decreed by the Court that for the period specified in paragraph III, except to the extent that the State of Mississippi has obtained a declaratory judgment under section 5 of the Voting Rights Act of 1965, supra, 79 Stat. 439, that a qualification, prerequisite, standard, practice or procedure enacted subsequent to November 1, 1964 does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, or has submitted such qualification, prerequisite, standard, practice or procedure to the Attorney General of the United States and the Attorney General has not interposed an objection within sixty days after such submission, Mrs. Evie Harris, Registrar of Voters of Clarke County, Mississippi, her agents, employees, and her successors in office and all those acting in concert or participation with them are enjoined

from determining the qualifications of citizens in Clarke County, Mississippi, in any manner or by any procedure different from or more stringent that the following:

(a) He is a citizen and is or will be 21 years of age or older at the time of the next election;

(b) He, at the time of the next election, has or will have resided in the State two years and in the election district in which he intends to vote one year;

(c) He is not disqualified by reason of conviction of a disqualifying crime, insanity or idiocy;

V. It is further ordered that Mrs. Evie Harris, her agents, employees, and successors in office, and all those acting in concert or participation with them, in conducting registration of voters in Clarke County, Mississippi, are enjoined and ordered to:

(a) Afford each applicant for registration an opportunity to apply and complete the application form whether either the registrar or deputy registrar is present.

(b) Advise each applicant, when he or she applies, whether the applicant is accepted or rejected; if accepted, the applicant must be registered at that time; if rejected, the applicant must be informed of the reason or reasons for his rejection.

(c) Receive and process each applicant as expeditiously as possible to the extent that the physical facilities of the registration office permit and take all reasonable steps to insure that, whenever possible, each applicant is processed on the day he appears for registration. The office of the registrar shall be open during the office hours observed by Mrs. Evie Harris in her capacity as the circuit clerk of Clarke County for registration.

VI. Mrs. Evie Harris, her deputies, agents, and successors in office shall, until further order of this Court, make the registration records of Clarke Coun-

ty, Mississippi, available to attorneys or agents of the United States at any and all reasonable times in the circuit clerk's office in Quitman for the purpose of inspection, copying, and photographing.

VII.    Jurisdiction is retained of this cause for all purposes and especially for the purpose of issuing any and all additional orders as may become necessary or appropriate for the purposes of modifying and/or enforcing this order.

VIII.    Costs in this Court are awarded to Plaintiff.