GLOBE SEAWAYS, INC., as owner of S/T REBECCA, and as bailee of the cargo laden thereon, Plaintiff-Appellee,

v.

PANAMA CANAL COMPANY, Defendant-Appellant.

No. 74–1654.

United States Court of Appeals, Fifth Circuit.

March 17, 1975.

Earl R. McMillin, Dwight A. McKabney, Balboa Heights, Canal Zone, for defendant-appellant.

Woodrow de Castro, Balboa, Canal Zone, Max Taylor, New York City, for plaintiff-appellee.

Before TUTTLE, WISDOM and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

On May 14, 1967, plaintiff-appellee Globe Seaways' [Globe's] 50,000-ton tanker REBECCA was damaged while negotiating the Miraflores Locks on the Panama Canal. The district court found that neither Globe nor defendant-appel-

lant Panama Canal Company [Canal Company], the United States Government agency which operates the Canal,[1] was negligent. In those circumstances the court concluded that § 291 of Title 2 of the Canal Zone Code imposed liability without fault upon the Canal Company. The Canal Company protests this locked-in liability and appeals this interlocutory order pursuant to 28 U.S.C. § 1292(a)(3). We believe that the district court properly interpreted the provisions of 2 Canal Zone Code § 291; we affirm.

■ The only question presented to us is whether, in a case where neither the shipowner nor the Canal Company is negligent in a particular accident occurring in a Canal lock, Congress has made the Canal Company liable for any resulting damage to the vessel, its cargo, crew or passengers.[2] Section 291 provides:

*Injuries in locks of Canal.*

The Panama Canal Company shall promptly adjust and pay damages for injuries to vessels or to the cargo, crew, or passengers of vessels, which may arise by reason of their passage through the locks of the Panama Canal under the control of officers or employees of the company. Damages may not be paid where the injury was proximately caused by the negligence or fault of the vessel, master, crew or passengers. If the negligence or fault of the master, crew, or passengers proximately contributed to the injury, the award of damages shall be diminished in proportion to the negligence

or fault attributable to the vessel, master, crew or passengers. . . . A vessel is considered to be passing through the locks of the Canal, under the control of officers or employees of the Company, from the time the first towing line is made fast on board before entrance into the locks and until the towing lines are cast off upon, or immediately prior to, departure from the lock chamber. 76A Stat. 23.

The Canal Company admits that the REBECCA was in the Miraflores Locks for the purposes of the statute, but disputes the district court's conclusion that section 291 makes it liable for the damage to Globe's ship in a case where no Canal Company employee was negligent. Defendant argues that the statute simply applies the doctrine of res ipsa loquitur to all cases involving injuries to vessels within the locks, and that since the Canal Company was not negligent, it has discharged its burden of proof and the loss must lie where it fell, upon Globe. The Canal Company accompanies this argument with a careful and detailed legislative history of the predecessor legislation to section 291, section 5 of the Panama Canal Act of August 24, 1912, 37 Stat. 560, and urges that a study of Congressional committee hearings, speeches on the floor of Congress and the common law pertaining to sovereign immunity and the general maritime law extant in 1912 compels the conclusion that Congress intended to place liability upon the Canal authorities only when they were negligent.[3] Moreover, the Canal Compa-

---

**1.** For a short history of the legislation creating and delineating the powers and duties of the Canal Company, *see* Gulf Oil Corp. v. Panama Canal Co., 5 Cir. 1969, 407 F.2d 24, 29–30 n. 6.

**2.** Neither party seriously contends that the district court erred in its determination that neither Globe nor the Canal Company was at fault in the accident. After a careful reading of the rather meager record available to us, we cannot say that the court below erred in refusing to charge either party with negligence.

**3.** For example, the Canal Company places great emphasis upon the testimony of Colonel George W. Goethals, the Chief Engineer of the Canal construction project, before the

Senate Committee on Interoceanic Canals, 62d Cong., 2d Sess. at 76 (1911):

In the first place, I think that the Government—and I will say that the regulations for the canal which will be promulgated when the canal is ready for operation—should provide that every vessel going through the canal should, when it reaches the locks, tie up to the approach piers which we have constructed, or are constructing above and below each of the locks, and that after they have tied up, that we take entire charge of the ship, with a man on the bridge and another in the engine room, and tow those ships through the locks and release them after the passage of the locks; that during the period of pas-

ny believes that this Court, in the cases of Victorias Milling Co. v. Panama Canal Co., 5 Cir. 1959, 272 F.2d 716, and Andros Shipping Co. v. Panama Canal Co., 5 Cir. 1962, 298 F.2d 720, has already adopted its interpretation of section 291. Globe, on the other hand, argues that section 291 plainly and unambiguously means what the district court said it means—that the Canal Company is liable without fault in this case—and that the legislative history of the Panama Canal Act is neither as clear nor so clearly unfavorable to Globe as the Canal Company contends.

▇ We are rescued from immersion in the sea of legislative history by the general principle that we must not refer to legislative history if the statutory language is clear. Gemsco, Inc. v. Walling, 1945, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921; United States v. Second National Bank, 5 Cir. 1974, 502 F.2d 535.[4] This salutary doctrine is predicated upon the notion that since Congress is presumed to have meant what it said, we must look first to the literal meaning of the words of the statute in order to determine how best to effectuate the Congressional intent. Perry v. Commerce Loan Co., 1966, 383 U.S. 392, 86 S.Ct. 852, 15 L.Ed.2d 827; Flora v. United States, 1958, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165; Mumford v. Glover, 5 Cir. 1974, 503 F.2d 878; United States v. Second National Bank, *supra.* Of course, we must not allow such literal-mindedness to lead us to absurd or unreasonable conclusions at war with the very policy that Congress intended to implement in the statute in question. *See* Church of the Holy Trinity v. United States, 1892, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226.

The plain meaning of the words of section 291 is that whenever a vessel or individual is damaged while passing through a Canal lock, the Canal Company must bear the cost unless it can be shown that "the injury was proximately caused by the negligence" of the injured party, in which case "the award of damages shall be diminished in proportion to" the contributory negligence of the injured party. There would be good reason for holding the Canal Company to such strict liability, for while a large vessel such as the REBECCA is negotiating the locks, its engines are shut off and the vessel is towed through the locks by the Canal Company's locomotives, under the sole direction of the Company's pilots. 35 C.F.R. §§ 109.4 and 109.7. If the crew and passengers are playing the passive role assigned to them in the scheme of Canal operations, there is nothing those people could do to cause or to avoid an accident. In the rare case, such as this one, where an accident occurs in the absence of negligence on the part of anyone, Congress could easily have determined, in view of the character of the Canal as a great international waterway, that the ends of good foreign relations and the smooth adjustment of claims for injuries suffered by Canal users while passing through locks would best be served by imposing liability on the Canal Company. *See* Gulf Oil Corp. v. Panama Canal Co., 5 Cir. 1973, 481 F.2d 561.[5]

Our conclusion as to the plain meaning of section 291 is fortified by a comparison of that provision with its companion statute, section 292 of Title 2 of the Canal Zone Code, which governs liability in case of accidents occurring within the

---

sage when we are in control of the ship we should pay all damages resulting to the ship through any carelessness on the part of the employees of the Government here.

**4.** As is the case with many general principles of ancient origin, this one must be used with care, *see* United States v. Second National Bank, *supra,* for it is not impossible for a statute or regulation to be clear, unambiguous and neutral on its face, and yet to have an unconstitutional purpose and effect. *See, e.*

g., United States v. Mississippi, 5 Cir. 1964, 339 F.2d 679; United States v. Louisiana, E.D.La.1963, 225 F.Supp. 353, aff'd, 1965, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709. When a statute conflicts with the Constitution, of course, no degree of pellucidity can save it.

**5.** In view of the extensive federal regulation of shipping in the Canal, *see* 35 C.F.R. parts 103, 105, 107, 109, 111 and 113, it is unlikely that the Canal Company, non-negligent though it might be, would be only an innocent bystander in such a case.

Canal but outside of the locks. Section 292 provides:

*Injuries outside locks.*

The Panama Canal Company shall promptly adjust and pay damages for injuries to vessels, or to the cargo, crew, or passengers of vessels which may arise by reason of their presence in the waters of the Canal Zone, other than the locks, when the injury was proximately caused by negligence or fault on part of an officer or employee of the Company acting within the scope of his employment and in the line of his duties in connection with the operation of the canal. If the negligence or fault of the vessel, master, crew, or passengers proximately contributed to the injury, the award of damages shall be diminished in proportion to the negligence of fault attributable to the vessel, master, crew or passengers. 76 Stat. 23.

 Section 292 clearly provides a rather different standard of liability for the Canal Company than does section 291. Whereas if a vessel or individual is injured while the vessel is in the locks, section 291 says that the Canal Company shall pay damages *unless* it can be shown that the vessel or individual was contributorily negligent, section 292 imposes liability upon the Canal Company *only if* the injured party can demonstrate that the injury was caused by a Canal Company employee. The differing standards of liability set out in sections 291 and 292 indicate that Congress made a conscious decision to impose strict liability on the Canal Company for accidents in its locks, but to impose only that measure of liability faced by other business enterprises, that is, the negligence standard, for accidents outside the locks. *Cf.* Gulf Oil Corp. v. Panama Canal Co., 5 Cir. 1973, 481 F.2d 561.

 The Canal Company argues, however, that section 291 commands the use of the venerable evidentiary doctrine of res ipsa loquitur,[6] so as to create a presumption that an accident inside the locks is the result of the Canal Company's negligence, but to allow the Company to rebut that presumption by demonstrating that it was not at fault. In this case, of course, the district court found that the Canal Company was not negligent, so that the Company would be exonerated from liability under its res ipsa loquitur theory. The Canal Company further asserts that this Court adopted this very interpretation of the statute in Victorias Milling Co. v. Panama Canal Co., *supra,* and ratified our decision there in Andros Shipping Co. v. Panama Canal Co., *supra.* We believe that the Canal Company has incorrectly interpreted both the statute and our decisions.

First, the plain language of section 291 refutes the Company's assertions. Although the doctrine of res ipsa loquitur might be particularly apt for use in circumstances such as those existing when a vessel negotiates a lock, Congress has certainly not chosen to invoke it in this statute. Res ipsa loquitur implies negligence on the part of the party against whom it is employed; section 291, however, nowhere requires that the Canal Company be negligent in order for it to be liable. We simply cannot ignore the unambiguous language of the statute in order to read a res ipsa loquitur corollary into section 291. Second, there is nothing in our *Victorias Milling* and *Andros Shipping* cases to indicate that we have already adopted the Canal Company's position in this matter. Section 291 was in no way involved in either of those cases, and we certainly did not intend to explore the mysteries of the extent of Canal Company liability hidden therein. Neither case set a standard that is different from the one we apply today.

In section 291, Congress has explicitly rendered the Canal Company liable for the damage suffered by ships, and the cargo, crew and passengers of ships, which pass through the locks of the Panama Canal. The clear language of the

---

**6.** A brief history of the doctrine may be found in Victorias Milling Co. v. Panama Canal Co., supra, 272 F.2d 716, 719–21.

statute provides a reasonable means to achieve the swift and fair resolution of claims resulting from accidents covered thereby. We cannot discard this certain index of Congressional purpose in order to pursue what the Canal Company, in the light of its own interests and responsibilities, believes to be a more equitable rule of liability.

Affirmed.