**NATALIE TANKSHIPS CORPORATION,**
**as Owner of the S/T OVERSEAS**
**NATALIE, Plaintiff,**

v.

**PANAMA CANAL COMMISSION,**
**Defendant.**

Civ. No. 79–0354–B.

District Court, Canal Zone,
Balboa Division.

Dec. 18, 1980.

Roy V. Phillipps, Republic of Panama, for plaintiff.

Raymond J. Burke, Jr., and Lenore E. McQuilling, Burke & Parsons, New York City, for plaintiff.

William H. Beatty, Asst. U. S. Atty., Miami, for defendant.

JOHN R. BROWN, Circuit Judge.[*]

The present cause of action under 2 C.Z.C. § 291[1] arose out of damages sustained as a result of the S/T OVERSEAS NATALIE striking the side wall of Miraflores Locks on April 9, 1979. Eliminating those damages as a result of the vessel's detention by the Board of Local Inspector's (B.L.I.), the parties have previously stipulated to the liability and quantum of damages levied against the Panama Canal Commission (P.C.C.). The sole issue presented to this Court on a stipulated record is whether Natalie Tankships Corporation (Owner) has a right to be reimbursed for losses resulting from the B.L.I. detention occasioned by the occurrence within the locks for which the P.C.C. has admitted complete liability.

*The Transit Begins—Statutory Language*

In resolving this issue of first impression, this Court weighs anchor and begins its transit through the applicable sections and regulations of the Canal Zone Code (C.Z.C.)[2] and is kept on course by sailing ranges of Fifth Circuit case law and legislative history of the applicable provisions.

It begins—and, as we view it, ends—with the statute 2 C.Z.C. § 293. This section enumerates the types of losses to be considered in determining an award of damages as well as those for which recovery will be denied.

---

[*] United States Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

1. *See Globe Seaways, Inc. v. Panama Canal Company*, 509 F.2d 969 (5th Cir. 1975).

2. The Canal Zone Code is now officially the Panama Canal Code. *See* § 3303(b) of Pub.L. 96–70, 93 Stat. 452, 499, approved September 27, 1979.

## § 293. Measure of damages generally

In determining the amount of the award of damages for injuries to a vessel for which the Panama Canal Company is determined to be liable, there may be included:

(1) actual or estimated cost of repairs;

(2) charter hire actually lost by the owners, or charter hire actually paid, depending upon the terms of the charter party, for the time the vessel is undergoing repairs;

(3) maintenance of the vessel and wages of the crew, if they are found to be actual additional expenses or losses incurred outside of the charter hire; and

(4) other expenses which are definitely and accurately shown to have been incurred necessarily and by reason of the accident or injuries.

[5a*] Agent's fees, or commissions, or other incidental expenses of similar character, or any items which are indefinite, indeterminable, speculative, or conjectural may not be allowed. The Panama Canal Company shall be furnished such vouchers, receipts, or other evidence as may be necessary in support of any item of a claim.

[5b*] If a vessel is not operated under charter but by the owner directly, evidence shall be secured if available as to the sum for which vessels of the same size and class can be chartered in the market. If the charter value can not be determined, the value of the use of the vessel to its owners in the business in which it was engaged at the time of the injuries shall be used as a basis for estimating the damages for the vessel's detention; and the books of the owners showing the vessel's earnings about the time of the accident or injuries shall be considered as evidence of probable earnings during the time of detention. If the books are unavailable, such other evidence shall be furnished as may be necessary. 76A Stat. 23.[3]

* [5a] and [5b] inserted for ease of reference.

And for the vessel to successfully assert a valid claim for the satisfaction of these admitted losses the vessel owner had to report the occurrence and submit to a B.L.I. investigation and hearing under 2 C.Z.C. § 297.[4]

B.L.I. detention losses are certainly not specifically excluded in the last unnumbered [5b] paragraph of 2 C.Z.C. § 293. Indeed, as we develop, detention losses causally related to the *in*-lock injuries are expressly included in the reach of § [5b]. And certainly if causally related and not within § [5b] excluded expenses which are "... incidental ... or any items which are indefinite, indeterminable, speculative or conjectural ..." they more than meet the catch-all provision in § (4) as "... other expenses which are definitely and accurately shown to have been incurred necessarily and by reason of the accident or injuries."

---

**3.** 2 C.Z.C. § 293 took effect on January 2, 1963 as the reenactment of the 1934 Code for the Canal Zone, as amended. The measure of damages provision in the 1950 legislation is substantially the same as the measure of damages contained in Executive Order 9227, Rule 95, August 19, 1942, Executive Order 4314, Rule 94, October 27, 1925, Executive Order 3438, Part IV, December 20, 1923 and Circular No. 720 issued by Governor Harding on July 11, 1918, pursuant to Executive Order 1910, July 9, 1914. For a more extensive historical treatment of this section *see Gulf Oil Corp. v. Panama Canal Co.*, 407 F.2d 24, 1969 A.M.C. 1 (5th Cir. 1969) (Gulfspray I), *on remand* 311 F.Supp. 1307, *aff.* 437 F.2d 111 (Gulfspray II), *supplemented* 335 F.Supp. 406, *modified* 481 F.2d 561, n.9 at 566, 1973 A.M.C. 1582, n.9 at 1586–87, (5th Cir. 1973) (Gulfspray III).

**4.** § 297. Investigation of accident or injury giving rise to claim

Notwithstanding any other law, a claim may be not considered under this subchapter, or an action for damages lie thereon, unless, prior to the departure from Canal Zone waters of the vessel involved:

(1) the investigation by the competent authorities of the accident or injury giving rise to the claim has been completed; and

(2) the basis for the claim has been laid before the Panama Canal Company. 76A Stat. 25.

This statutory requirement was the principal subject of *Gulfspray I* and led to the Court sustaining its validity as there sensibly and reasonably construed.

In the starkest reality, the loss during detention would not have been incurred but for the accident for which P.C.C. acknowledged its full liability and the accident in turn created the necessity for the B.L.I. detention.

What then produces the problem?

*A Collision of Statute and Regulation?*

Presumably to carry out the § 297 investigation (and to effectuate the sweeping powers over navigation within the Canal) 35 C.F.R. § 103.7 provides:

§ 103.7 **Temporary holding of vessels.**

The Canal authorities may hold a vessel for the purpose of investigating any claims or disputes that may arise, or any formal or informal complaint or allegation of a violation of the laws of the Canal Zone or of the United States or of the provisions of this chapter. A vessel may also be held until, in the opinion of the Canal authorities, its tenderness, trim, list, cargo, hull, machinery, and equipment have been put into such condition as will make the vessel reasonably safe for her passage through the Canal. *No claim for damages shall be allowed or considered because of any such temporary holding of vessels.* (emphasis added)

The concluding sentence sets the stage for our narrow controversy—whether this regulation can override the § 293 liability for this type of detention.

■ At the outset the Court does not question the general validity of this and other regulations covering the operation of the Canal.[5] And it adheres to the general principle that the particular construction and interpretation of a statute by the enforcing agency is entitled to deference by the courts, *see, e. g., NLRB v. Hearst Publications,* 322 U.S. 111, 131, 64 S.Ct. 851, 860, 88 L.Ed. 1170, 1185 (1943); *Unemployment Commission v. Aragon,* 329 U.S. 143, 153–54, 67 S.Ct. 245, 250, 91 L.Ed. 136, 144–45, the courts are the final authority of statutory construction. *See, e. g., FTC v. Colgate-Palmolive Company,* 380 U.S. 374, 385, 85 S.Ct. 1035, 1042, 13 L.Ed.2d 904, 914 (1965). At the same time courts are not required to "stand aside and rubber stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *Volkswagenwerk Aktlengesellschaft v. Federal Maritime Commission,* 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090, 1098, (1968), quoting *NLRB v. Brown,* 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839, 849 (1965).

■ But it is important always to bear in mind that

[t]he power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law—for no such power can be delegated by Congress—but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity. [Citing cases] And not only must a regulation, in order to be valid, be consistent with the statute, but it must be reasonable. [Citing cases].

*Manhatten General Equipment Company v. Commissioner of Internal Revenue,* 297 U.S.

---

5. This Court recognizes the congressional grant of authority to the President to issue regulations governing the navigation of the harbors and other waters of the Canal Zone—2 C.Z.C. § 1331.

2 C.Z.C. § 1331. *Regulations governing navigation, transiting, pilotage, and licensing of officers; penalties for violation*

The President may prescribe, and from time to time amend, regulations governing:

(1) the navigation of the harbors and other waters of the Canal Zone;

(2) the passage and control of vessels through the Panama Canal or any part thereof, including the locks and approaches thereto;

(3) pilotage in the Canal or the approaches thereto through the adjacent waters; and

(4) the licensing of officers or other operators of vessels navigating the waters of the Canal Zone.

Whoever violates a regulation issued pursuant to this section shall be fined not more than $100 or imprisoned in jail not more than 30 days, or both.

This authority was delegated by Executive Order to the Secretary of the Army—35 C.F.R. 3.1(a)(1).

129, 134–35, 56 S.Ct. 397, 399, 80 L.Ed. 528, 531 (1935).

### Through the Locks of Legislative and Judicial History

In this quest a proper decision calls for close inquiry into an application of *Gulfspray I* and especially *Gulfspray III*. Each case traces in detail the development and changes in the structure of the Canal Zone, both political and industrial, and the congressional purpose to concentrate all of the industrial-economic operations in the Canal Company with the expectation that in such operations the Company would have substantially all the legal liability of a private person with a consequent broad relinquishment of nearly all traces of sovereign immunity.

■ Based in large part on congressional purpose in enacting the Public Vessels Act, 46 U.S.C.A. § 781 *et seq.*, and the Suits in Admiralty Act, 46 U.S.C.A. § 741 *et seq.*, which allows the Government to be held as fully liable as a private shipowner, the Court asked and then answered the rhetorical question: "In divorcing the industrial-business activity from the political government of the area, what more logical thing was there to do than provide a system by which the government was held accountable for consequences of its business activities on a substantial parity with that already established for the mainland or on the high seas"? *Gulfspray III*, 481 F.2d at 569. The Fifth Circuit concluded that Congress must have intended, except in very few situations, "a recovery of damages substantially parallel to that accorded by general maritime law, and certainly that of England and the United States." *Id.* This invoked the time honored maritime principle of restitutio in integrum. *Ove Skou v. United States*, 478 F.2d 343 (5th Cir. 1973), 1973 A.M.C. 1482 (1973). Broadly interpreted and applied, this principle seeks to make good the total losses suffered by the shipowner for the casualty inflicted by the fault of another including the loss of the use of the vessel.

■ As general maritime principles are to be used in interpretation and application

of § 293, there can be no doubt that in ancient precedent of the Fifth Circuit "[i]t is well settled that the loss of profits or of the use of a vessel, pending repairs or other detentions, arising from a collision is a proper element of damages." EL MONTE, 252 F. 59, 64 (5th Cir. 1918). And three quarters of a century ago the Supreme Court declared:

> That the loss of profits or of the use of a vessel pending repairs or *other detention*, arising from a collision, or other maritime tort, and commonly spoken of as demurrage, is a proper element of damage, is too well settled both in England and America to be open to question. It is equally well settled, however, that demurrage will only be allowed when the profits have actually been, or may be reasonably supposed to have been, lost, and the amount of such profits is proven with reasonable certainty. (emphasis added)

The CONQUERER, 166 U.S. 110, 124, 17 S.Ct. 510, 515, 41 L.Ed. 937, 944 (1897).

Going back once again to *Gulfspray III*, the Court talked expressly in terms of § 293 including § [5b]. There the Court awarded loss of hire (detention) and out-of-pocket expenses for the entire period the vessel was out of commission—11 days—despite the actual repair time of four days. It expressly addressed and rejected P.C.C.'s claim that only four days should be used to compute recovery of detention and related expenses.

> *Again [partial recovery] is at odds with the goal of substantial parity with general maritime principles and particularly the care with which detention claims are provided for in § 293, ¶ (2), (3) and the last unnumbered [5b] paragraph which refers generally to 'the value of the use of the vessel to its owners in the business in which it was engaged at the time of the injuries shall be used as a basis for estimating the damages for the vessel's detention . . . .' (emphasis added)*

*Gulfspray III*, 481 F.2d at 572.

### A Judicial Hard-A-Starboard

■ Applying the *Gulfspray III* interpretation of general maritime principles to

§ 293[5b] and § (4) the allowance of detention losses during the period for the B.L.I. investigation/hearing is statutorily mandated. Thus, there is not only risk of collision but actual collision with 35 C.F.R. § 103.7. One or the other must give way. Operating on the notion of the General Prudential Rule, *see* 33 U.S.C.A. §§ 146k (Rule 27), 212 (Art. 27), 350 (Rule 25),* the Court concludes that the statute as interpreted by the Fifth Circuit must prevail since the regulation on this phase "operates to create a rule out of harmony with the statute." *Manhattan*, 207 U.S. at 134–35, 56 S.Ct. at 399.

Section 293 was part of the Canal Zone Government Act enacted in 1950 [6] which set up the separation of political and industrial activities to give rise to *Gulfspray III*'s broad expansion of liability (and consequent reduction in sovereign immunity). It would be incongruous to think Congress would have intended to take back in the left hand that which was granted in the right. And since neither the 1950 Act nor its legislative history reveal any congressional purpose to have the prohibition of Regulation § 103.7 carried forward, the conclusion reached is not affected by the length of time the predecessors to Regulation § 103.7 may have been in effect.

### The Transit Ends

The intent of this opinion and order is not to declare the Regulation a nullity, but merely to interpret that portion of the Regulation which would deny a vessel B.L.I. detention expenses as damages when the P.C.C. is found liable. It is not necessary to invalidate the Regulation for delays occasioned by B.L.I. detention when the P.C.C. has no legal responsibility for the occurrence giving rise to the investigation or when the vessel is being temporarily held for reasons other than accident investigation. And certainly, this interpretation does not mean that detention damages may now become the sole basis for a suit, but rather allowable only where other allowable damages occur.

Thus, the transit ends with this thought: "[a] reasonable interpretation produces a reasonable result. An unreasonable interpretation produces a harsh absurdity". *Gulfspray I*, 407 F.2d at 32. This Court steers clear of such a result here by allowing B.L.I. detention expenses as part of the measure of damages to OVERSEAS NATALIE.

---

* The General Prudential Rule and the Rules of the Road of which it formed a part have since been repealed; *see* 33 U.S.C.A. §§ 1601 *et seq.* The contemporary analogue to the General Prudential Rule is Rule 2 (Responsibility), 33 U.S.C.A. *foll.* § 1602.

6. Act of Sept. 26, 1950, Pub.L.No. 841, 48 U.S.C.A. § 1319, U.S.Code Cong. & Ad.News 1032–37. Legislative history of the Act, 2 C.Z.C. § 293 as contained in S.Rep.No.2531, 81st Cong., 2nd Sess. (1950). H.R.Rep.No.2935, 81st Cong., 2nd Sess., *reprinted in* [1950] U.S. Code Cong. & Ad.News, pp. 3926, 3926.

> The new section 3 which has been inserted is very lengthy but is a technical amendment to make certain that the bill contains a proper provision for the payment of damages and claims in the event of injuries for which the Panama Canal Company is liable.

U.S.Code Cong. & Ad.News at p. 3926.